This suit was filed as the result of an intersectional collision that occurred in mid-afternoon on August 27, 1948 between a bus owned and being driven at the time by the plaintiff, and an ambulance owned by the defendant and being operated by one of its employees. Plaintiff has joined defendant's liability insurer, the Standard Accident Insurance Company. The collision occurred at the intersection of North 19th Street and Gracie Street in the City of Baton Rouge.
Plaintiff alleged that his bus entered the intersection before the ambulance and had its front end beyond the center line of Gracie Street when the driver of defendant's ambulance disregarded a stop sign and recklessly and at an excessive speed entered the intersection and struck the bus on its side at a point just behind the front right door with the front end of the ambulance and damaged the bus, as per an itemized statement annexed to the petition.
The defendant filed its answer which was in effect in general denial and further answered that the ambulance was being driven east on Gracie Street at a lawful rate of speed with its red emergency warning light blinking and its siren sounding continuously until it reached the intersection of Gracie and North 19th Street; that as it reached this intersection the driver slowed the vehicle down in order to ascertain if he could proceed without endangering those who might be in, or entering said intersection and that at that time defendant's driver observed that traffic from his left had yielded the right of way and he then assumed it safe to enter said intersection without interference; that the driver then looked to his right for any traffic coming from the opposite direction on North 19th Street and ascertained that he could cross the intersection without any fear of interference from vehicles proceeding in that direction; that while his attention was directed to the right, or south, on North 19th Street the plaintiff negligently and recklessly proceeded to pass around the two automobiles which had already stopped in order that the ambulance might proceed, and entered the intersection from the north end on the left, or east side, of North 19th Street without any warning whatsoever; that as soon as defendant's driver saw that the plaintiff was about to enter the intersection he immediately applied his brakes, and did all that he could to avoid the collision; that the plaintiff was grossly negligent in passing around the automobiles that had stopped to give the defendant's ambulance the right of way, and in so doing created a sudden emergency not due to any fault of defendant's driver, and the defendant further charged that the plaintiff was negligent in failing to immediately drive his bus to the right hand curb of North 19th Street upon the approach of the emergency vehicle and in failing to see and hear the ambulance when he could and should have seen or heard it, and, therefore, that the plaintiff's negligence was the sole and proximate cause of the collision. *Page 160 
The case was duly tried and resulted in a judgment in favor of the plaintiff as prayed for. From this judgment the defendants have prosecuted this appeal.
There was introduced in evidence an official safety bulletin of the City of Baton Rouge, Louisiana for the year 1944 containing Traffic Ordinances and Amendments, among other things. The plaintiff specifically contended that the driver of the ambulance violated the following ordinance regulating the operation of the ambulance which is designated as an authorized emergency vehicle under the terms of this ordinance which reads:
"Section 6. Exemptions to authorized emergency vehicles:
"The provisions of this ordinance regulating movement, parking and standing of vehicles shall not apply to authorized emergency vehicles while the drivers of such vehicles are operating the same in an emergency in the necessary performance of public duties, except that such drivers shall not drive through an intersection where a traffic signal is exhibiting the signal 'red' or 'stop' without first slowing down and ascertaining that such can be done safely and without endangering those who might be in, or entering such intersections; and provided further that drivers of ambulances shall in no event drive same at a speed in excess of forty miles per hour. However, this exemption shall not protect any of the drivers of vehicles of the fire and police departments and of ambulances from the consequences of reckless disregard of the safety of others."
The Lower Court in its written reasons found "that plaintiff entered the intersection first and that the collision was caused by the negligence of the defendant's driver by not having his ambulance under control as a result of driving at an excessive speed at this intersection where a stop sign required him to stop and which he was permitted to pass through without stopping only after first 'slowing down and ascertaining that such can be done safely and without endangering those who might be in, or entering such intersection * * *.' "
Thus, the District Court Judge squarely held that the ambulance had violated the provisions of Article 2, Section 6 of the traffic ordinances of the City of Baton Rouge. We will consider this phase of the case first.
The facts as revealed by the record show that on the date of the collision that the plaintiff, who operated a passenger bus to and from the Standard Oil Company where he was also employed, was traveling in a southerly direction on North 19th Street and had aboard some 25 or 28 passengers and was proceeding slowly at a speed of from 10, and not more than 15, miles per hour; that there had been an automobile collision at the intersection of North 20th Street and Gracie Street which is one block further east from the scene of the collision in the present case, and that as a result of this collision the defendant received an emergency call and in response thereto the ambulance was being driven in an easterly direction on Gracie Street at a speed estimated to be from 30 to 35 miles per hour. There was a stop sign at the intersection which required vehicles entering North 19th Street from Gracie Street to stop before proceeding into North 19th Street. There is no doubt that the ambulance had its warning lights blinking and its siren sounding as proven by the two police officers who saw the collision from the scene of the previous collision one block further east on Gracie Street at its intersection with North 20th Street and also by the testimony of a disinterested witness, namely, Russell E. Venable of Clinton, Louisiana, who at the time and on the day of the collision was operating the filling station located on the southwest corner of Gracie and North 19th Street. All three of these witnesses testified that they heard the siren at least two or three blocks away and that it also had its red warning lights blinking. It is true that plaintiff offered the testimony of himself and seven of his passengers on the bus to the effect that they did not hear the siren until the ambulance was 30 to 40 feet from the point of the collision. They testify that they heard the siren just as the brakes were applied and that it seemed *Page 161 
to them as if the siren and brakes all came on at the same time. We believe that it is established beyond any doubt that the siren was being continuously sounded on the ambulance, except that the sound was somewhat diminished when the driver of the ambulance took his foot off of the siren button in order to make the turn from North 18th Street into Gracie Street.
The point at which the ambulance struck the bus was approximately in the center of North 19th Street which would also be the center of the intersection of the two streets as testified to by the police officer.
The defendant contended that the reason the ambulance driver proceeded across the stop sign was because two automobiles had pulled up to the right curb of North 19th Street, and the ambulance driver naturally presumed that Gracie Street was clear and therefore continued thereon; that the bus driver, however, did not pay any attention to the parked cars, and went around them creating the emergency which resulted in the collision in spite of every effort on the part of the driver of the ambulance to avoid it. That contention of the defendant is supported by the positive testimony of the ambulance driver and of witness Venable, but is contradicted by the positive testimony of the bus driver and his passengers, and to some extent by the police officer who stated that he did not see any parked cars at the intersection. He was a block away and may not have been in a position to see whether or not there were two cars parked there.
Regardless of the above contention, it is shown that there is a vacant lot on the northwest corner of the intersection of North 19th Street and Gracie Street which would have afforded the drivers of both vehicles a clear view of each other quite a distance back from the intersection. There is also some testimony by Venable that the ambulance slowed down for the intersection, but giving full credit to the driver of the ambulance for sounding his siren and for seeing two cars which he believed were yielding the right of way, he did not keep the proper lookout. He should have seen plaintiff's bus as he had an unobstructed view across a vacant lot and even if the bus was passing the two cars at the time he looked, it is shown that the bus was much taller than the ordinary automobile and there was nothing to prevent the driver of the ambulance from seeing this bus. Therefore, he was negligent in not keeping a proper lookout, and although his speed was not in excess of that fixed by the ordinance, which was 40 miles per hour, it was excessive to such an extent as to constitute negligence, as the skid marks were 39 feet in length, and even then he was unable to bring his ambulance to a stop before striking the bus. He should have slowed down to such a speed as would have enabled him to have stopped his ambulance so as not to endanger those who might be in, or entering the intersection, as provided by the traffic ordinance. The trial Judge was correct in holding that the driver of the ambulance had violated the traffic ordinance quoted, and that such violation was a proximate cause of the collision.
The defendants strenuously urged their plea of contributory negligence based upon the contention, among others, that the plaintiff violated Article 2, Section 30 of the Traffic Ordinances of the City of Baton Rouge which states:
"Operation of other vehicles on approach of authorized emergency vehicles:
"Upon the approach of any authorized emergency vehicle, provided said emergency vehicle gives an audible signal by bell or siren, the driver of every other vehicle shall immediately drive same to a right hand curb of the streets, on all streets except one-way streets, and then on either right hand edge or left hand edge of such one-way street, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle or vehicles shall have passed, unless otherwise directed by a police officer."
The Judge of the District Court held that the plaintiff was not guilty of contributory negligence in failing to see the *Page 162 
ambulance or hear the siren which was being sounded by defendant's driver for the reason that in his opinion "there could be no violation of this ordinance unless the evidence should show that the siren was actually heard by plaintiff and he disregarded same." He cited the case of Roll Osborn Sons, Inc., v. Howatt, La. App., 167 So. 466, 469, and stated in his reasons that the Court in that case, "In passing upon the question involving the alleged negligence of a driver in not hearing a siren being sounded by an ambulance driver, said: '* * * While many witnesses heard the siren, their ability to do so was not interfered with by the noise of a running automobile as was his. He had no reason to anticipate the approach of theambulance, and was not delinquent in failing to see and hearthat which he was not legally required to anticipate.' " (Italics by District Court.)
The Osborn case, supra, involved an intersectional collision between an ambulance and an automobile. The automobile was proceeding on a green light which it had a legal right to do under the Traffic Ordinances of the City of Shreveport, and the ambulance was proceeding in the face of a red light which it specifically had no legal right to do under the city ordinance. The contention was made that the ambulance was granted certain privileges under provisions contained in the State traffic laws. The Court specifically held that under the law the City ordinances prevailed and, therefore, the ambulance was violating a positive law by proceeding in the face of a red light and that the driver of the automobile "had no reason to anticipate the approach of the ambulance, and was not delinquent in failing to see and hear that which he was not legally required to anticipate." In the present case, the law gave the ambulance the right to cross a street in the face of a red light or a stop sign, provided the driver took certain precautions and, therefore, the plaintiff could not plead ignorance of this provision of the law and was chargeable with the knowledge that at any time an ambulance might be encountered and that under the terms of Section 30 above quoted, it was the duty of the driver of every other vehicle, upon the approach of any authorized emergency vehicle, to immediately drive his vehicle to a right hand curb of the street, provided the emergency vehicle was giving an audible signal by bell or siren. In the Osborn case, the driver of the automobile was not required, whether he heard the siren or not, to pull to the right hand curb if the traffic signal was favorable to him and unfavorable to the ambulance, while in the present case, the law being different, the plaintiff was chargeable with the knowledge that under the law an ambulance could, under certain conditions, proceed against a traffic signal or stop sign. The siren was heard by the two traffic officers and the witness Venable and there was no reason why the passengers on the bus, nor the plaintiff, should not have heard it also. Under the law he is chargeable with hearing what he should have heard. The plaintiff was also negligent in not seeing the ambulance, in view of the fact that the vacant lot gave to him and his passengers an unobstructed view of Gracie Street in the direction in which the ambulance was coming. Practically all of plaintiff's witnesses admitted that had they looked down Gracie street they would have seen the ambulance, and the plaintiff, under his own admission and testimony, was looking south, or straight ahead, and nowhere does he say that he looked toward Gracie Street or down Gracie Street, until he heard the brakes and siren on the ambulance which he testifies was applied when the ambulance was about 25 or 30 feet from him. While it is true that the plaintiff, under ordinary circumstances, enjoyed the right-of-way, he was under a legal duty to keep a proper lookout and to hear and see that which he should have heard and seen, and, clearly, had he kept a proper lookout he would have heard and seen the ambulance and could easily have avoided the collision. The negligence of plaintiff in this respect was also a proximate cause of the collision and he was, therefore, guilty of contributory negligence, barring his recovery. *Page 163 
It is therefore ordered that the judgment of the District Court be reversed and annulled and the plaintiff's suit be dismissed at the cost of the plaintiff.