68 So.2d 626 (1953)
CALVERT FIRE INS. CO.
v.
HALL FUNERAL HOME et al.
No. 7977.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1953.
*627 Redmond & Harkey, Monroe, for appellant.
Hudson, Potts, Bernstein & Davenport, Monroe, for appellees.
Before HARDY, GLADNEY and McINNIS, JJ.
GLADNEY, Judge.
This case was consolidated for trial with Ryerson v. Hall Funeral Home, La.App., 68 So.2d 632, after which separate judgments were rendered and separate appeals taken.
Plaintiff, Calvert Fire Insurance Company, brought this action to recover damages to its automobile sustained on July 5, 1951, in a collision with an ambulance owned by the defendant, Hall Funeral Home, which collision occurred at the corner of North Fourth and Washington Streets in the City of Monroe, Louisiana. From a judgment rejecting its demands, plaintiff has appealed.
There is no substantial conflict in the evidence as to the circumstances leading up to accident.
On the above date at about 3:30 p. m. with weather clear, Reginald P. Ryerson, driving an automobile owned by his employer, Calvert Fire Insurance Company, was traveling east on Washington Street between North Third and North Fourth Streets at a speed of approximately twenty miles per hour. Near the center of the block he passed the R. & K. Cafe and when within one hundred feet of the intersection of Washington with North Fourth Street, he met and passed an automobile driven by Clyde Hinton. He continued at the same rate of speed and upon encountering a green traffic signal light proceeded into the intersection where he was struck by the ambulance.
A short time prior to the accident W. B. Thompson, driver for the Hall Funeral Home, proceeded on an emergency trip in response to a telephone call advising several persons had suffered injuries in an automobile accident on U. S. Highway 80 west of Monroe. As he left the funeral home he turned on flashing red lights attached to the front bumper and top of the ambulance, and set a pull-dash button which automatically opened the siren with which the ambulance was equipped. With the flashing lights and siren thereon being in constant operation, Thompson proceeded north upon his mission. En route he crossed the rather highly elevated railroad tracks on Jefferson Street one block from the scene of the collision with plaintiff's car. Thompson testified he slowed his vehicle upon approaching the railroad tracks but after crossing he accelerated his speed so that at the time of the collision he was moving about forty miles per hour. He said as he approached the subject intersection certain vehicles going in a northerly direction along North Fourth Street moved to the right and came to a stop which caused him to pull to the left of said vehicles for the *628 purpose of crossing the intersection. When he arrived at the intersection he was confronted with a red traffic signal light. At about the same time Ryerson entered the intersection from Washington Street and the impact occurred approximately in the center of the intersection.
Plaintiff alleges the driver of the ambulance was negligent in that he was guilty of excessive speed, crossing the intersection in the face of a red light, passing automobiles at an intersection, failing to keep a proper lookout and maintain proper control, and driving on the wrong side of the street.
By way of answer, defendants deny these charges except to admit the ambulance did attempt to cross the intersection against a red light. Defendants aver the siren was being constantly sounded, that Thompson was maintaining a proper lookout while driving at a speed of approximately thirty miles per hour and they claim the exemption accorded emergency vehicles under the Monroe traffic ordinance. They specially plead the contributory negligence of Ryerson, alleging his failure to obey the provisions of the city traffic ordinance requiring automobiles upon the approach of an emergency vehicle to pull to or near the curb and stop, was a proximate cause of the accident. Also specified are charges that Ryerson was proceeding at an excessive rate of speed, that he drove recklessly into the intersection without reduction of speed, and that he failed to exercise the last clear chance to avoid said accident. After examination of the record, however, we have failed to find substantial evidence to support the latter charges above specified.
Specially plead are Sections 9 and 68 of the traffic ordinance of the City of Monroe, relating to an emergency vehicle:
Section 9:
"Be it further ordained, etc., that when an emergency vehicle is making an emergency run and while sounding siren, whistle, bell or other signaling device ordinarily used by emergency vehicles, it shall be unlawful for the operator of any vehicle within hearing of such warning to fail immediately to draw his vehicle to a position parallel with and close as possible to the right edge or curb of street, clear of any intersection or alley, and shall there stop and remain stopped until such emergency vehicle has passed and until it is known no other emergency vehicle is approaching; and provided further that it shall be unlawful for any vehicle, other than another emergency vehicle, to follow an emergency vehicle closer than 300 feet in the rear of such emergency vehicle while said emergency vehicle is making an emergency run."
Section 68:
"Be it further ordained, etc., that the provisions of this Ordinance shall not apply to emergency vehicles when not in motion; and shall not apply to emergency vehicles in motion while engaged in an emergency run and while the warning device, siren, bell, whistle or horn of such vehicle is constantly being sounded; provided that the driver or operator of an emergency vehicle shall, even while engaged in making an emergency run, be held answerable under charges of reckless driving for unnecessarily excessive speed or reckless driving that may endanger life, limb or property."
The general effect of Section 68 of the ordinance, supra, is to exempt emergency vehicles from traffic regulations imposed by the ordinance subject only to accountability for unnecessary excessive speed and reckless driving that would endanger life, limb or property.
Section 9 of the ordinance requires drivers of vehicles within hearing of the siren of an emergency vehicle to immediately draw the vehicle to a position parallel with and as close as possible to the right edge of the street and to remain in a still position until the emergency vehicle has passed.
Our first intention is to determine the responsibility of the driver of the emergency vehicle in view of the exemption before *629 it of Section 68 of the traffic ordinance.
It is not uncommon for a statute or ordinance within certain limitations to grant emergency vehicles such as ambulances, fire apparatus, police cars and other conveyances used in saving life and property, and enforcing laws, some form of exemption from the necessity of obeying traffic regulations. Such statutes or ordinances vary as to qualifications placed upon the exemption. Within the limitations a driver may be found negligent in the light of all the circumstances surrounding the accident. And, assuming that the driver of an emergency vehicle was negligent under this doctrine, such negligence may not be made the basis of a recovery by an injured party if the latter did not perform the duties imposed on him by the statute or ordinance exempting emergency vehicles from the necessity of obeying traffic signals. 164 A.L.R. note pp. 219-232; 5 Am.Jur., Automobiles, § 294; 60 C.J.S. Motor Vehicles, §§ 376, 377, pages 931, 932.
The driver of the emergency vehicle should be required by suitable warning to give others a reasonable opportunity to yield the right of way but there is not imposed upon him the same quantum of care as upon motorists generally. If the driver of the emergency vehicle was held to the same amount of care as other motorists the requirement would have the effect of practically nullifying the traffic exemptions expressly granted. The duty so imposed, we believe, is to refrain from a reckless disregard of the safety of other motorists and pedestrians.
The burden of care imposed upon the operator of an emergency vehicle requires something more than the mere sounding of a siren or the blinking of a red light. These warnings are ordinarily sufficient to give notice of the approach of an emergency vehicle toward a point of danger, but there are other considerations. When approaching an intersection against a traffic signal light giving crosswise traffic a "green" or "go" sign, and where traffic approaching from either his left or right is obscured, the driver of the emergency vehicle should diminish his speed and bring under control his vehicle until he can be reasonably certain he may pass without unduly subjecting other motorists or pedestrians to danger. He should be aware that notwithstanding the warning from the siren other motorists or pedestrians may still be proceeding through the intersection on the invitation of a green light. Instances may well be imagined where noise or interference of some nature would prevent the hearing of the signal. This, it seems to us, is a factor that should be anticipated by the driver of the emergency vehicle and appropriate control exercised, and where by his failure to so act other motorists or pedestrians are endangered the exemption granted under the ordinance must be considered forfeited.
The driver of the ambulance in attempting to cross the intersection of Washington and North Fourth Streets directly in the face of a red light and without diminishing his speed or bringing his car under more complete control has, in our opinion, forfeited the exemption granted by the ordinance and was guilty of negligence. He could not observe to his left vehicles approaching the intersection on Washington Street and moving upon the invitation of a favorable green light. Furthermore, he was proceeding on his left side of the street in excess of normal speed traveled by other vehicles. Prudence required that he not blindly proceed without having reason to believe that he could do so without danger to life and property. The subject ordinance does not license the reckless crossing of intersections. The accident occurred at a busy intersection at 3:30 p. m., thus presenting conditions requiring the observance of precautions for the safety of other motorists and pedestrians. The operation of the ambulance in the manner disclosed by the record was a proximate cause of the collision.
Ryerson testified that he failed to hear the siren or the ambulance as it approached the intersection. The rule is well established that the driver of a motor vehicle will be held to have heard that which he *630 should have heard. But this rule has its exceptions and we must determine if the automobile driver should be excused from its enforcement.
Counsel for appellant surmises that as the ambulance approached the railroad track it was as if traveling in a tunnel between the buildings along North Fourth Street and the sound of the siren was being channeled directly between the buildings toward the intersection of North Fourth Street with Washington Street. From this assumption it is argued that certain witnesses were in a more advantageous position to hear the ambulance than was Ryerson and that this was particularly true as to Elijah Shelley. This argument must fail for want of substantial evidence to establish the premise upon which it is predicated. The record indicates other witnesses on Washington Street in the near vicinity of plaintiff heard the siren as the ambulance neared.
The southwest corner of the intersection of North Fourth and Washington Streets is the used car lot of the Lennon Motor Company. On this lot there were a number of parked automobiles which effectively prevented Ryerson and Thompson from observing each other as they approached the intersection. The southeast corner of the intersection likewise is a used car lot. South of said lot along the east side of North Fourth Street are a number of buildings extending to the railroad tracks on Jefferson Street some three hundred feet from the intersection of North Fourth and Washington Streets. On the west side of North Fourth Street toward Jefferson Street and adjoining the south side of the Lennon Motor Company parking lot there is situated the Ouachita Furniture Company's two-story building, and to the south of said building is a loading ramp. To the west of the loading ramp is the Monroe Hardware Company building.
To enable the court to determine whether Ryerson should or should not have heard the approaching ambulance and taken precautions required by Section 68 of the traffic ordinance, numerous witnesses were called to testify. For better understanding of the relative positions of the witnesses a description of their opinions is herewith recorded.
Elijah Shelley, a witness called to testify by the plaintiff, was near the northeast corner of the Lennon Motor Company lot and apparently only a few feet from the southwest corner of the intersection. He testified he heard the siren as it approached from the railroad tracks. Clyde Hinton, another plaintiff witness testified he heard the siren just before he passed Ryerson on Washington Street, approximately seventyfive feet from the intersection with North Fourth Street. Mrs. Robert Goza, who was employed in the R. & K. Cafe located on the north side of Washington Street in the block between North Third and North Fourth Streets, and approximately one hundred sixty feet from North Fourth Street, stated she heard the siren and a little while later heard the impact of the collision. John W. Clark testified he was sitting in an automobile facing Washington Street on the Lennon Motor Company parking lot, that he heard the siren and turned to see the ambulance coming from the direction of the railroad tracks. E. S. Wells, who also was somewhere near the Lennon Motor Company lot heard the siren and later heard the impact. All of the witnesses who testified, with the single exception of Ryerson, heard the siren.
The logical inference from all of this testimony is that Ryerson was in a position where he should have heard the siren timely and brought his automobile to a stop as required by the ordinance. Upon examination by counsel he testified his window was down, that the car radio was not playing and there was no noise or disturbance to interfere with his hearing the warning signal. Under these circumstances we are forced to the conclusion that plaintiff should have heard that which he could have heard. Plaintiff, therefore, was guilty of contributory negligence which was a proximate cause of the accident for had he heeded the siren as he should have and promptly brought his automobile to a stop the accident would not have occurred. No reason *631 is given why he should not have heard the signal as did many other witnesses.
In support of its legal position counsel for plaintiff cite the case of Roll Osborn & Sons, Ins. v. Howatt, La.App.1936, 167 So. 466, but the facts therein are different from the instant case and, therefore, the decision is not controlling. That case involved a collision between an ambulance and automobile as a result of which the owner of the ambulance sued defendant. The defendant was permitted recovery upon his reconventional demand because the ambulance ran a red light. The court found the provisions of the Shreveport traffic ordinance did not exempt emergency vehicles from the observance of traffic light signals and placed no added responsibility upon the automobile driver. In consequence thereof the court held the sole proximate cause of the collision was the negligence of the driver of the ambulance.
In Hardy v. Daigre-Gilbert Undertaking, Inc., La.App.1949, 42 So.2d 158, there occurred a collision between an automobile and an ambulance in the City of Baton Rouge. The ordinance authorized the following exemption:
"The provisions of this ordinance regulating movement, parking and standing of vehicles shall not apply to authorized emergency vehicles while the drivers of such vehicles are operating the same in an emergency in the necessary performance of public duties, except that such drivers shall not drive through an intersection where a traffic signal is exhibiting the signal `red' or `stop' without first slowing down and ascertaining that such can be done safely and without endangering those who might be in or entering such intersections; and provided further that drivers of ambulances shall in no event drive same at a speed in excess of forty miles per hour. However, this exemption shall not protect any of the drivers of vehicles of the fire and police departments and of ambulances from the consequences of reckless disregard of the safety of others."
This regulation in some respects is similar to Section 68 of the Monroe traffic ordinance. In the Baton Rouge ordinance emergency vehicles are not permitted to drive through an intersection where a traffic signal is exhibiting the signal "red" or "stop", without first slowing down and ascertaining that the crossing can be done safely and an ambulance may not drive in excess of forty miles per hour. The Court of Appeal of the First Circuit held the drivers of both vehicles negligent, finding each driver was in a position to see the other approaching the intersection and that neither driver made any effort to bring his vehicle under proper control to avoid an impending collision. Plaintiff also was held negligent for the reason that the siren of the ambulance was in constant operation and although plaintiff did not hear the siren he should have heard it.
It is the opinion of this court that Ryerson as he drove eastward into the intersection should have heard the siren and observed the provisions of Section 9 of the Monroe traffic ordinance. This required him to give the right of way to the ambulance and bring his automobile to a stop until the emergency vehicle had passed, and because of his failure to so do, he was guilty of negligence that was a proximate cause of the accident, thus barring the recovery of a claim contingent upon the negligence of the ambulance driver.
Thompson, the driver of the ambulance was guilty of reckless driving and endangering the life and property of others in attempting to pass through the intersection when confronted with a traffic signal displaying "red" without diminishing his speed and without being able to observe whether traffic was approaching from his left on Washington Street in response to a green favorable light. The exemption granted under the ordinance was forfeited when he attempted to enter the intersection in the manner shown. Prudence required that he not rely entirely upon the siren. Each driver must be held guilty of negligence constituting a proximate cause of the accident.
*632 The judge a quo in his written reasons rejecting the demands of plaintiff held the driver of the ambulance free from negligence. On this point we respectfully disagree.
For the foregoing reasons the judgment from which appealed is affirmed, appellant to pay all costs of suit, including cost of appeal.