TATE, Judge.
The plaintiff Whatley brings suit to recover for personal injuries resulting from a motor vehicle collision on July 31, 1959. At the time of the accident, plaintiff was driving a gravel truck for his employer. Made defendants are (a) Scogin, the driver of the other vehicle involved, (b) Scogin’s employer, and (c) the liability insurer of the Ford passenger automobile being driven by Scogin at the time of the accident. The plaintiff’s employer intervened to recover for workmen’s compensation benefits paid to their employee, the plaintiff Whatley, as a result of the accident.
The trial court awarded the plaintiff $28,334.41 and further recognized the in-tervenor’s subrogation claim. The defendants appeal from such judgment. The plaintiff answers the appeal, seeking an increase in the award.
I. Liability.
The accident occurred at a hilly curve on a gravel country road. It took place *835 at ten o’clock in the morning. There were no unusual weather conditions at the time.
Although contradictory versions of the accident were given by the plaintiff Whatley and the defendant Scogin, each supported by some corroborating witnesses, we find that the trial court correctly felt that the preponderance of the evidence supported the version of the accident given by the plaintiff Whatley.
Under this version, which to some degree is corroborated by the physical facts of the accident and by admissions from the witnesses testifying for the defendants, the plaintiff, at a speed of 5-10 mph, had just proceeded some thirty feet past the crest of a hilly curve, when the defendant, approaching from the opposite direction at a speed of 40-50 mph, lost control of his automobile and skidded into the side of the plaintiff’s truck. The truck was well on its own side of the road, at a place where the roadway was approximately, thirty feet wide. The preponderance of the evidence shows that the plaintiff had never left his own side of the roadway.
As we recently re-stated in Breaux v. Valin, La.App. 3 Cir., 138 So.2d 405, 406: “Under such circumstances, a driver who on his wrong side of the road collides with another car which is in its correct lane of traffic is required to exculpate himself of any fault, however slight, contributing to the accident. [Citations omitted.]”
In holding the defendant Scogin’s negligence to be the sole proximate cause of the accident, we think that the trial court correctly held that “ * * * plaintiff while driving a loaded gravel truck and just after attaining the top of a hill and onto a straight stretch of road, was struck by an automobile driven by Arlis D. Scogin. It appears that Scogin did not see the truck timely and applied his brakes and skidded into the path of the truck thus causing the collision and the resulting injuries to plaintiff.”
Eminent counsel for the defendants-appellants, in an ingenious and lengthy brief, seeks to convince this court that the facts of the accident should be construed so as to hold that it occurred when the plaintiff made a left turn across the defendant Scogin’s front, arguing that at the place of the accident the plaintiff Whatley had entered in intersection in Scogin’s path.
This argument is based upon the circumstance that at the crest of the hill another gravel road ran into the curve of the main gravel road upon which both the plaintiff Whatley and the defendant Scogin were approaching with the intention of passing one another and continuing on, each in the direction from which the other came.
Despite counsel’s able argument, we are unable to hold that this circumstance alters the duties of the drivers to keep on their own side of the road on which they were travelling and to avoid encroaching on the other lane and colliding with approaching traffic properly therein. To reiterate, the facts preponderantly show that one driver approaching a curve at a speed too excessive to maintain control and to stay on his own side of the roadway, skidded over, upon applying his brakes, and struck the slow-moving other vehicle, which had always remained in its own lane of traffic on the curve in the roadway in question.
Counsel also argues that the plaintiff Whatley was contributorily negligent in having failed to sound his horn, relying on LSA-R.S. 32:242 which pertinently provides : “The driver of a motor vehicle traversing hilly highways shall hold it under control and as near the right hand side of the highway as reasonably possible, and upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway, shall give audible warning with a horn or other warning device. * * * ” (Italics ours.)
Plaintiff produced substantial evidence that the defendant Scogin should have ob *836 served the presence of Whatley’s truck climbing the incline when Scogin was at a distance of 250-500 feet distant from him. It is further to be remembered that Whatley was approaching at a speed of 5-10 mph, while Scogin was coming from the opposite direction at a speed of 45-50 mph. Even though Whatley may have failed to sound his horn as he entered the curve, such failure is not proven to be a proximate cause of the accident, considering that he had already negotiated the curve at the time of the accident and that Scogin should reasonably have observed the approaching truck in the other lane of the road in time to have avoided the accident, had he been exercising proper lookout. See Elmore v. Jackson Transfer & Storage Co., La.App. 1 Cir., 36 So.2d 408, syllabus 2. The sole proximate cause of the accident was Scogin’s losing control of his own automobile and striking the truck in the latter’s lane.
II. Quantum.
The trial court awarded the plaintiff a total of $28,334.41. The award included: Special damages of $3,104.41 for medical expenses and travel expenses connected therewith, and of $10,230 for loss of earnings; and general damages of $15,000.00 for pain and suffering and loss of future earnings.
Without contradiction, the evidence reflects the'following:
Immediately following the accident, the plaintiff noticed only some slight bruises and some hip, leg, and knee pain. On the next day he reported to his family physician, suffering with severe back pain and pain in his left hip and down his left leg. The condition was at first diagnosed as back sprain, but, since it continued in severity, on September 11, 1959 (about six weeks after the accident) the plaintiff was referred to an orthopedist, who diagnosed the cause of the plaintiff’s complaints and undoubted disability as a ruptured inter-vertebral disc.
An operation was performed on January 16, 1960 in which two discs were removed. The plaintiff still continued to suffer a substantial amount of pain and disability, but, on November 20, 1960, acting upon the advice of the attending orthopedist, the plaintiff attempted to resume work. As a result of a single day’s work, he suffered so greatly that he was incapacitated from further attempts at work.
The plaintiff was then re-examined by the attending orthopedist. Various studies made of the plaintiff’s condition by this doctor and another orthopedist revealed that massive scar tissue had formed as a result of the first operation and was causing substantial nerve root pressure, thus causing severe pain similar in nature to that caused by a ruptured disc.
A second operation was performed on December 29, 1960, and confirmed this diagnosis of the formation of a scar tissue mass. This tissue was removed. A few weeks after the operation, however, the pain again returned, indicating that new scar had formed. Both attending orthopedists agreed that the abnormally large scar tissue was caused by some abnormal body function from which plaintiff suffered, and stated such scar tissue was likely to form again after further surgery, so that there was little hope for cure of the plaintiff’s condition.
Both physicians testified that it was their opinion that as of May 26, 1961, the plaintiff was temporarily totally disabled from any type of activity. It was their opinion that it would be at least one year from the date of the last operation before the plaintiff could perform even light work. At the end of this period, it was their opinion that plaintiff would be permanently partially disabled to the extent of approximately 30% of his normal bodily function and that his occupations would be limited to light work which would not require lifting or bending. They were also of the opinion that the pain which plaintiff now suffers would possibly *837 subside to a certain extent, but that he could expect to suffer from some degree of pain for an indefinite period into the future, probably permanently. When questioned specifically about the possibility of the plaintiff returning to his previous occupation of operating heavy machinery such as dump trucks and bull-dozers, it was their opinion that plaintiff could never perform heavy work in the future without suffering severe pain.
The evidence shows that plaintiff had a seventh grade education and that he has been employed all his life as a manual laborer. He possesses no technical knowledge or business experience that would enable him to perform work not of a strenuous, physical nature. He was 38 years old at the time of the accident, with a life expectancy of at least 30 years. He was earning about $4,000 per year at the time of the accident.
The defendants did not produce any evidence to contradict this testimony of disability. They argue instead that the plaintiff did not produce sufficient evidence corroborative of his history to rule out any other cause of the plaintiff’s back condition. (Although they further suggest that the recurrence of disability was brought on by the plaintiff’s premature effort to do heavy work, this suggestion is proven to be incorrect by the uncontradicted testimony of the orthopedic specialists that the continued pain resulted from scar tissue rather than any additional trauma.)
With regard to the causal relationship between the plaintiff’s back condition and the accident, we find no error in the trial court’s finding that it resulted from the accident in question, especially in the absence of the slightest suspicious circumstances or any evidence that such injury resulted from any other cause. The un-contradicted medical testimony ascribes it to such cause, accepting the uncontradicted testimony of the plaintiff and of the circumstances surrounding the initial onset of symptoms as correct.
The special damages awarded are proven by the record. As to the general damages, the defendants contend that they are excessive, while the plaintiff contends that the award is insufficient.
We have recently restated the standard of appellate review of trial court awards as follows: “The trial court has much discretion in the award of general damages for pain and suffering, and the trial court’s award should not ordinarily be disturbed upon appellate review since such awards of necessity are somewhat arbitrary in nature and must vary greatly according to the facts and circumstances of each case; although nevertheless awards should be made so that there is some degree of uniformity in cases involving similar injuries, after taking into account the great variation in circumstances surrounding each injury. [Citations omitted.]” Jobe v. Credeur, La.App. 3 Cir., 125 So.2d 487, 488-489.
Applying this standard, we find that the award for pain and suffering and for future disability and loss of earnings is manifestly insufficient in the light of awards made for similar injuries. Taking into consideration the severe pain which the plaintiff has suffered and the pain and suffering to be sustained by him throughout the remainder of his life; and considering the permanent disability to do heavy work in which alone, because of his education and experience, he earned his livelihood in the past, thus indicating a substantial permanent loss of earning capacity; we think that an award should be made for plaintiff’s past and future pain and suffering and for his permanent disability and loss of future earnings in the total amount of $30,000. Turner v. State, La.App. 2 Cir., 137 So.2d 456; Fullilove v. U. S. Casualty Co., La.App. 2 Cir., 129 So.2d 816; Hidalgo v. Dupuy, La.App. 1 Cir., 122 So.2d 639.
For the foregoing reasons the trial court judgment is amended so as to award the plaintiff an additional fifteen thousand dollars; and, as thus amended, the judgment *838 is affirmed. The defendants are to pay all the costs of these proceedings and of this appeal.
Amended and affirmed.