AYRES, Judge.
This is an action in tort wherein plaintiffs, husband and wife, seek to recover damages for personal injuries sustained by the wife and for reimbursement of hospital and medical expenses incurred in treatment of the wife’s injuries.
This action arose out of an intersec-tional collision between an ambulance of the Spears Funeral Home, operated by Gerald K. Farrar, in which ambulance Mrs. Johnston was being conveyed on a stretcher to a clinic in Monroe, and a Ford automobile driven by Mrs. Caro Webb Elliott. Made defendants were the Peerless Insurance Company, insurer of the ambulance, and the American Employers’ Insurance Company, insurer of the Elliott automobile. On a finding of negligence on the part of Farrar but absolving Mrs. Elliott from fault, there was judgment against the Peerless Insurance Company in favor of Mrs. Johnston for $3,500.00 and in favor of her husband for $1,123.96.
From the aforesaid judgment, plaintiffs prosecute a devolutive appeal and the Peerless Insurance Company, a suspensive appeal.
Questions as to the liability of both defendants, as well as to the adequacy of the awards, are presented by these appeals.
First, logically, for consideration is the question of liability. The accident occurred at the intersection of North Fourth and Pine Streets in the City of Monroe. The movement of traffic through this intersection is governed and controlled by the usual type of electric-light signal suspended above the center of the intersection. The ambulance was proceeding south on North Fourth Street, Mrs. Elliott, west on Pine Street. Mrs. Elliott had a green light favorable for her to proceed. The light was, therefore, red for the ambulance. As Mrs. Elliott approached the intersection, cars proceeding both north and south on North Fourth Street were stopped awaiting a change in signals, whereupon Mrs. Elliott entered the intersection. Immediately and only momentarily thereafter, the ambulance, proceeding south, as heretofore stated, took to its left and entered the northbound traffic lane of North Fourth Street, passed the cars stopped in the southbound traffic lane, notwithstanding the presence of the stop light and Mrs. Elliott’s prior entrance into the intersection. A collision resulted. Mrs. Elliott’s car struck the left side of the ambulance to the rear of the driver’s seat. The stretcher upon which Mrs. Johnston was lying was broken and detached from its moorings, and Mrs. Johnston received the injuries for which damages are claimed.
The record establishes that the intersection in which the accident occurred constituted, due to the buildings situated on the corners, a blind corner. Farrar testified he could see only approximately 15 feet on Pine Street before entering the intersection. Nevertheless, while traveling at a fast and excessive speed, Farrar ran a red light without any necessity for haste. There was no emergency connected with Mrs. Johnston’s mission in seeking medical aid. Her ailment involved a gallbladder condition. She had intended to drive her *417 own car, but, because of the development of nausea, she decided to call upon her doctor by ambulance.
Whether the siren on the ambulance was in operation is a matter in dispute. Farrar testified it was functioning. Other witnesses nearby and in the vicinity of the accident testified to the contrary. The preponderance of this testimony, as found by the trial court, was that the siren was not being sounded when the ambulance entered the intersection or at the time of the accident. Thus, the conclusion is inescapable that Farrar not only failed to keep a proper lookout but that he heedlessly drove into a dangerous intersection when, admittedly, he could not see traffic having a superior right of way approaching the intersection.
Appropriate to the aforesaid facts and. circumstances are the observations and pronouncements of this court in Calvert Fire Ins. Co. v. Hall Funeral Home et al., La.App.2d Cir., 1953, 68 So.2d 626, 629. That case involved a collision between an ambulance and an automobile which occurred at the intersection of North Fourth and Washington Streets in the City of Monroe, only a few blocks distant from the scene of the accident presently concerned. In that case, the ambulance driver was answering an emergency call and the evidence established that the siren was in operation. However, the driver of the ambulance was held to have forfeited whatever exemptions were granted to him under a city ordinance when he attempted to enter the intersection in a manner similar to that undertaken by Farrar. In discussing the principles involved, this court stated:
“The burden of care imposed upon the operator of an emergency vehicle requires something more than the mere sounding of a siren or the blinking of a red light. These warnings are ordinarily sufficient to give notice of the approach of an emergency vehicle toward a point of danger, but there are other considerations. When approaching an intersection against a traffic signal light giving crosswise traffic a ‘green’ or ‘go’ sign, and where traffic approaching from either his left or right is obscured, the driver of the emergency vehicle should diminish his speed and bring under control his vehicle until he can be reasonably certain he may pass without unduly subjecting other motorists or pedestrians to danger. He should be aware that notwithstanding the warning from the siren other motorists or pedestrians may still be proceeding through the intersection on the invitation of a green light. Instances may well be imagined where noise or interference of some nature would prevent the hearing of the signal. This, it seems to us, is a factor that should be anticipated by the driver of the emergency vehicle and appropriate control exercised, and where by his failure to so act other motorists or pedestrians are endangered the exemption granted under the ordinance must be considered forfeited.”
The facts of the instant case are very similar to those of the cited case, wherein it was observed:
“The driver of the ambulance in attempting to cross the intersection of Washington and North Fourth Streets directly in the face of a red light and without diminishing his speed or bringing his car under more complete control has, in our opinion, forfeited the exemption granted by the ordinance and was guilty of negligence. He could not observe to his left vehicles approaching the intersection on Washington Street and moving upon the invitation of a favorable green light. Furthermore, he was proceeding on his left side of the street in excess of normal speed traveled by other vehicles. Prudence required that he not blindly proceed without having reason to believe that he could do so without dam ger to life and property. The subject ordinance does not license the *418 reckless crossing of intersections. The accident occurred at a busy intersection at 3:30 p. m., thus presenting conditions requiring the observance of precautions for the safety of other motorists and pedestrians. The operation of the ambulance in the manner disclosed by the record was a proximate cause of the collision.” (68 So.2d 626, 629.)
The facts of this case, viewed in the light of the pronouncements in'the Calvert case, lead to no conclusion other than that Far-rar was at fault in the occurrence of the accident.
Remaining for consideration on the question of liability is the issue of fault, if any, on the part of Mrs. Elliott. It may be pointed out, in this regard, that, in addition to the fact she had a green light, her speed was moderate. Nor is there any evidence substantiating the charge that she was not keeping or maintaining a proper lookout. No dereliction of duty was shown on her part. Had she been derelict in her duty, such dereliction, in order to charge her with negligence, must have been most substantial.
Appropriate to this situation is an observation repeated in Kientz v. Charles Dennery, 209 La. 144, 24 So.2d 292, 295, wherein it was stated:
"We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred.”
See, also: Bryant v. Ouachita Coca-Cola Bottling Co., 239 La. 83, 117 So.2d 919; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Noonan v. London Guarantee and Accident Company, La.App.2d Cir., 1961, 128 So.2d 918.
Pertinent, also, is the holding in Shaw v. Globe Indemnity Company, La.App.2d Cir., 1961, 134 So.2d 609. There, a collision occurred at the intersection of Kings Highway and Linwood Avenue in the City of Shreveport. This intersection was controlled by an electric semaphore traffic signal. Mrs. Shaw, driving westerly on Kings Highway, entered the intersection on a green light. Her car was struck broadside by an ambulance of a funeral home which had moved into the intersection against a “red” light. There, it was held that the motorist, on entering the intersection on a green light and colliding with the ambulance, which had red blinker lights and siren operating, was not contributorily negligent for not having heard the siren, where her windows were closed except for a one-inch crack on the driver’s side, which was opposite from the direction of travel of the approaching vehicle, and where the heater and fan were in operation. Thus, it was concluded that Mrs. Shaw was not guilty of any substantial dereliction of duty.
The facts and circumstances, gauged by the aforesaid principles, likewise, lead to no other conclusion than that Mrs. Elliott was not guilty of negligence in the occurrence of the accident.
Remaining, therefore, for consideration is the question of quantum of the awards which should be made in compensation for the injuries sustained, and for reimbursement of expenses incurred in their treatment.
Mrs. Johnston, 44 years of age, was, prior to the accident, other than for the gallbladder disturbance, in apparent good *419 health. As a housewife and the mother of four children, she performed the usual household duties and chores, including the milking of the cows. Occasionally, she had been employed as a saleslady and had been •active in church work. On the day of the accident, February 19, 1962, Mrs. Johnston was admitted to a hospital where she remained until February 26, 1962.
Attention was first directed to Mrs. John■ston’s gallbladder complaint, the cause for which she initially intended to see her doctor. Within a few days, however, this condition subsided. Further physical and x-ray examinations revealed that Mrs. Johnston had sustained a fracture of the coccyx •and was afflicted with traumatic bursitis in her hip. Pains from these causes were described as “excruciating and terrific.” On returning home from this period of hospitalization, Mrs. Johnston continued under the care and treatment of Dr. George Wright, Jr. Pain was ever present.
No improvement having been noted and pain and suffering continuing, plaintiff was again admitted to the hospital on June 5, 1962. Surgery was performed on June 12, 1962, for the removal of the fractured segments of the coccyx. After remaining in the hospital until June 19, 1962, plaintiff again returned home, but treatment was continued. She was undergoing treatment at the time of trial, 11 months after the accident. The operation was unsuccessful. Pier disability continued, as well as her pain and suffering. Although all the fractured segments of the coccyx had been removed, Dr. Wright testified that plaintiff was no better off after the operation than before. Pain and suffering persisted even to the date of trial, not only in the coccygeal area but in her hip. A second operation for the removal of the remaining segment of the coccyx is a probability.
Support of the body, while in a sitting position, is one of the purposes of the coccyx. This use has been permanently impaired or lost to Mrs. Johnston. Relief from pressure from the critical areas is afforded by the constant use of a doughnut-shaped rubber cushion or tube. Some temporary relief from pain and discomfort is thereby afforded. No permanent relief, however, is assured by even a second operation.
From our appreciation of the facts disclosed by this record, plaintiff’s injuries are of a permanent nature. She has lost, because of the injury through surgery, a segment of the spinal column and has sustained permanent disabilities. In all probability, she will hereafter suffer pain and discomfort. Her activities are greatly restricted. She cannot perform all the household duties she formerly did; nor can she sit for prolonged periods of time; nor drive a car, other than for brief periods, except with pain and discomfort.
While there is no fixed basis or standard which will serve as an accurate guide in the establishment of monetay awards, in the nature of damages for personal injuries, each case must necessarily be considered on the basis of its own factual circumstances. Beck v. United States Fidelity & Guaranty Co., La.App.2d Cir., 1954, 76 So.2d 120 (writs denied).
Nevertheless, it has been recognized that awards made in similar cases are to be considered by the courts so that, within the limits permitted by a particular state of facts, a degree of uniformity will be maintained, so far as possible and practicable, to the end that awards may not be out of proportion one with the other. Wainwright v. Globe Indemnity Company, La.App.2d Cir., 1954, 75 So.2d 554, 556; Kingrey v. Fire Association of Philadelphia, La.App.2d Cir., 1959, 117 So.2d 619, 621.
However, while the trial court has much discretion in the award of damages, the rule that such awards should not ordinarily be disturbed is inapplicable where the awards are manifestly excessive or insufficient. Whatley v. Scogin, La.App.3d Cir., 1962, 143 So.2d 833, 837 (writs *420 denied); Jobe v. Credeur, La.App.3d Cir., 1960, 125 So.2d 487, 488-489.
Applying these rules, we find that the authorities cited and relied upon by defendants are inapposite. For instance, Jackson v. Firemen’s Insurance Company, La.App.1st Cir., 1956, 86 So.2d 220, involved injuries consisting principally of a fractured coccyx. Plaintiff testified as to suffering severe pains for only two months. She was seen only four times by her physician.
In Paggett v. Travelers Indemnity Company, La.App.2d Cir., 1957, 99 So.2d 173, the record does not disclose that plaintiff suffered nearly so extensively as did plaintiff in the instant case. In the cited case, plaintiff sustained a type of whiplash injury to her cervical vertebra with a painful and partially disabled knee. X-rays disclosed a small chip evulsion of the fifth cervical vertebra.
In Tresche v. Callaway, La.App.4th Cir., 1962, 147 So.2d 255, plaintiff sustained in addition to a scalp wound, fractures of the transverse process of the second, third, and fourth lumbar vertebrae.
The record in the case of Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127, discloses that plaintiff suffered pain in his back as a result of an accident. X-ray studies revealed only normal findings as to the lumbosacral spine.
In none of these cases was surgery involved; neither was there a permanent loss or impairment of the body; nor was there severe, prolonged, and continued pain and discomfort. The award as made in the instant case is, in our opinion, manifestly inadequate and should be increased. An award of $7,500.00 to Mrs. Johnston is, in our opinion, neither inadequate nor excessive.
We find no basis to alter the award as made in favor of Mr. Johnston. The item for loss of wages was not established to that degree of certainty required by law, nor was the claim for future medical expenses. To allow recovery for these items, resort would have to be made to conjecture.
A motion to remand for the purpose of taking additional medical testimony, urged on behalf of plaintiff, Mrs. Johnston, is, in our opinion, without merit as the testimony sought to be offered would only serve to explain testimony already in the record which needs no further amplification. Thus, the testimony would be merely cumulative in character. The motion is, therefore, overruled.
Accordingly, for the reasons assigned, the judgment appealed is amended by increasing the award to Mrs. Janie Bridges Johnston to the principal sum of $7,500.00, and, as thus amended, the judgment appealed is affirmed. The defendant-appellant, Peerless Insurance Company, is taxed with cost, including the cost of this appeal.
Amended and affirmed.