284 So.2d 158 (1973)
James E. FRANKLIN, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA et al., Defendants-Appellants.
No. 4304.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
Rehearing Denied November 2, 1973.
Writ Refused December 14, 1973.
*159 Scofield, Bergstedt & Gerard by Richard E. Gerard, Jr., Lake Charles, for defendants-appellants.
E. M. Nichols, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, SAVOY and DOMENGEAUX, JJ.
FRUGÉ, Judge.
This is an action for damages sustained in an automobile collision. Plaintiff's suit was met by an exception of prescription which was overruled by the trial court. A jury verdict of $80,000 was rendered in favor of plaintiff. Both parties appeal. We affirm.
This suit arose out of an automobile accident which occurred on April 29, 1970. Plaintiff, James E. Franklin, while driving a 1965 Rambler station wagon, owned by Yellot Ford, Inc., was in collision with a 1965 International van truck owned by Borden, Inc. Plaintiff was traveling south on La. Highway No. 27 north of Sulphur, Louisiana, at approximately 50 miles an hour when defendant's vehicle traveling North at approximately 45 miles an hour swerved into the southbound lane striking the plaintiff's vehicle on the left front. The above facts were stipulated by the parties. The issues presented to this court are: (1) Whether the exception of prescription was properly overruled? (2) Whether the back injury plaintiff complains of was caused by the accident? (3) The amount of damages awarded plaintiff.
We will first consider the exception of prescription filed in the instant suit. The facts which form the basis of this exception are unusual, if not unique. We deem it necessary to list the events which are pertinent to the inquiry herein:
(1) April 29, 1970, accident occurred;
(2) July 8, 1970, suit No. 84,871 filed. Plaintiff prayed for trial by jury but failed to post the advanced jury cost deposit required by LSA-R.S. 13:3050;
(3) On August 20, 1971, Royer v. Royal Globe Insurance Company, et al, 252 So.2d 189 (La.App. 3rd Cir., 1971) was decided. This case held that the failure to post the $12.00 jury fee required by LSA-R.S. 13:3050, required a dismissal of the suit;
(4) On November 3, 1971, defendant, Insurance Company of North America, filed a motion to dismiss suit No. 84,871;
(5) On November 10, 1971, plaintiff filed suit No. 90,464 (the case now before this court) in District Court alleging a cause of action based on the April 29, 1970 accident;
(6) On the same day, a contested rule was heard to determine why plaintiff's first suit, No. 84,871, should not be dismissed under the rationale of the above case. The trial court ruled he had no choice but to dismiss the plaintiff's original suit.
(7) On November 12, 1971, counsel for defendant learned the Louisiana Supreme Court had granted writs in the Royer case (259 La. 931, 253 So.2d 378). Upon conferring with counsel for plaintiff, the parties informally agreed that signing of the judgment of dismissal of suit No. 84,871 would be held in abeyance until such time as the Royer decision was handed down by the Supreme Court;
*160 (8) On April 17, 1972, counsel of record for plaintiff withdrew and present counsel enrolled in that capacity in suit No. 90,464;
(9) On April 18, 1972, an exception of lis pendens was filed in suit No. 90,464 by the defendant, Insurance Company of North America;
(10) Subsequent discussion between counsel for defendants and counsel for plaintiff relative to dismissal of suit No. 84,871 resulted in an impasse. Counsel for defendant insisted the agreement between he and former counsel was binding upon plaintiff and would not consent to a dismissal of the first suit;
(11) On May 10, 1972, plaintiff in suit No. 84,871 filed a rule ordering defendant to show cause why the court should not sign a formal judgment of dismissal;
(12) On May 23, 1972, a contested rule was heard;
(13) On June 16, 1972, a judgment of dismissal without prejudice was signed dismissing suit No. 84,871;
(14) On June 29, 1972, the Louisiana Supreme Court reversed Royer, supra; Royer v. Royal Globe Insurance Company, 262 La. 685, 264 So.2d 607 (1972)[1];
(15) On September 21, 1972, defendant filed a preemptory exception of prescription in suit No. 90,464, which was overruled.
It is the contention of defendants that plaintiff voluntarily dismissed suit No. 84,871. Counsel for defendants argues suit No. 84,871 then cannot be considered as interrupting prescription. Defendants' argument is based on Louisiana Civil Code Art. 3519, which provides:
"If the plaintiff in this case, after having made his demand, abandons, voluntarily dismisses, or fails to prosecute it at trial, the interruption is considered as never having happened."
This is an action ex delicto to which the one year prescription of Louisiana Civil Code Art. 3536 applies. LSA-R.S. 9:5801 provides the timely filing of suit in a court of competent jurisdiction and venue interrupts the running of prescription. Suit No. 84,871 was timely and properly filed. Suit No. 90,464 was filed more than 18 months after the accident. The cause of action would have prescribed at that time unless suit No. 84,871 interrupted prescription.
It is apparent defendant filed the Motion to Dismiss in suit No. 84,871. Plaintiff contested the Motion to Dismiss, but lost. No judgment was signed and defendant initiated an agreement to hold the signing in abeyance. Plaintiff filed suit No. 90,464 on the day the motion was heard. Defendant filed an exception of lis pendens. It was at this point plaintiff, stymied by defendant, sought to have the judgment signed in suit No. 84,871 in order to proceed with suit No. 90,464. The trial court found that plaintiff had not voluntarily dismissed his suit but followed the only logical course of action to remedy "the absurd situation in which he found himself."
Under the circumstances it cannot be said plaintiff voluntarily dismissed his initial suit. Plaintiff sought to proceed with his case but could not obtain the defendants' agreement on the signing of a final judgment of dismissal. If the judgment had been immediately signed, there would be no question that it was defendant who obtained a dismissal. We find no merit in the defendants' contention that plaintiff dismissed the suit.
We find that even if plaintiff had dismissed the first suit, the exception of prescription must still be overruled. The facts indicate that suit No. 90,464 was filed on the day the Motion to Dismiss was heard. Formal judgment was not signed until June 16, 1972. The first suit was viable and the prescription remained interrupted. *161 With the filing of the second suit, the prescription was continuously interrupted. This is the rationale of Levy v. Stelly, 277 So.2d 194 (La.App. 4th Cir., 1973); writ denied La., 279 So.2d 203 (1973).
This decision confines the operation of Article 3519 to the situation where plaintiff files the initial suit and voluntarily dismisses, abandons, or fails to prosecute at trial, suit is dismissed, then a second suit is filed. The first is considered as never having happened and therefore, no interruption of prescription has occurred. However, where plaintiff's first suit is still pending and the second suit is filed, the interruption of the first suit is still viable and the interruption of prescription after the dismissal of the first suit is not affected. The Supreme Court denied writs with the statement; "The Court of Appeal is correct." The same conclusion was reached in Tug Alamo, Inc. v. Electronic Service, Inc., 275 So.2d 419 (La.App. 4th Cir., 1973).
Defendants allege that the verdict of the jury, apparently based on the finding of a causal relationship between the automobile accident on April 29, 1970, and the claim plaintiff was suffering from a herniated disc at the L4-L5 level, was contrary to the weight of the medical evidence presented. Testimony of plaintiff is that approximately one month after the accident, he was having pains in his back. His then attorney made an appointment with Dr. Charles V. Hatchette, a local orthopedist. Dr. Hatchette, according to plaintiff, was unable to find anything wrong with the plaintiff. (Tr. 150, 151). Plaintiff was next examined by Dr. Edmund C. Campbell, an orthopedic surgeon, on November 24, 1970. Dr. Campbell was unable to find evidence of a pathological disc in plaintiff's back. On November 9, 1971, plaintiff was again examined by Dr. Campbell, who at this time found that the plaintiff had a spinal condition known as spina bifida occulta, a congenital defect. This he thought had no clinical significance relative to the injury complained of by plaintiff. He was again unable to find evidence of low back disability. Dr. Campbell testified that it was possible, but not medically probable, that the injury complained of by plaintiff would not have manifested itself at the time of this examination.
Plaintiff then sought the advice of Dr. Steven Price, a general practitioner, on February 26, 1971. Subsequently, plaintiff saw Dr. Price on 24 occasions. However, Dr. Price was unable to find any medical evidence of a degenerative disc in plaintiff's lumbar spine, but continued treating him since muscle spasms existed. Plaintiff eventually sought the advice of Dr. William G. Akins, an orthopedist, who examined the plaintiff on February 11, 1972. Upon noticing an apparent loss of strength in plaintiff's great right toe muscle, Dr. Akins recommended plaintiff undergo a myelogram and discogram to determine whether there was a degenerated disc in his lumbar spine. Based on these procedures, Dr. Akins concluded there was positive evidence of a pathological disc in plaintiff's lumbar spine, the L4-L5 level.
Defendants' witness, Dr. Norman P. Morin, an orthopedist, examined plaintiff on April 30, 1971. At this time, Dr. Morin could find no physical evidence of a disability in the plaintiff's lumbar spine. This finding was based upon orthopedic and x-ray examinations.
Testimony of plaintiff and his witnesses is to the effect that plaintiff had been continuously suffering with his back from the time of the accident. It was only when he remained absolutely inactive that he was able to find relief from his pain. Plaintiff was treated by Dr. Hatchette, and Dr. Price for a considerable period of time. Moreover, Dr. Price stated that this man demonstrated objective evidence of muscle spasms in the lower back. While Dr. Price was unable to find the cause of plaintiff's pain, he felt that it was significant that plaintiff showed no signs of improvement during the period of his treatment. *162 Therefore, he recommended that plaintiff see another specialist in order to determine the exact cause of plaintiff's pain. He was referred to a local orthopedist, but upon appearing for the appointment, plaintiff was unable to provide the cost of this visit. He then sought Dr. Akins's medical opinion.
Dr. Akins concluded a myelogram and discogram were necessary. The results of these tests indicated that plaintiff was suffering from a degenerated disc which was probably ruptured. Although Dr. Akins testified the only sure way of determining a ruptured disc was through surgical operation, he was of the opinion the disc was ruptured. When asked hypothetically if the accident of April 29, 1970, could have caused the injury in the lower back to the plaintiff, he answered the accident "could probably have caused it". (Tr. 201). The testimony of Dr. Campbell indicated that while he felt plaintiff should have manifested more definite signs earlier, that it was indeed possible that the injury could have been caused by this accident of April 29, 1970. Based on this evidence which was presented to the jury for their consideration, we cannot say manifest error was committed.
Defendant complains that the award of $80,000 made by the jury was excessive and should be reduced. Plaintiff seeks to increase the award. Appellate review of the award of damages by the trier of fact is confined to the determination of whether there has been an abuse of the "much discretion" vested in the trier of fact. Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Co., 246 La. 963, 169 So.2d 64 (1964).
Defendants stipulate plaintiff suffered a multiple, non-displaced fracture of the left ramus of the mandible. No surgery, nor wiring of the jaw or stitches were required. Plaintiff was treated for this injury by Dr. John B. Lewis from April 29, 1970, until August 6, 1970. The injury was well-healed and resulted in no disfigurement or impairment in the jaw. Plaintiff remained on a diet of soft foods and liquids during treatment. Dr. Lewis testified there was a great deal of swelling and loss in symmetry in the plaintiff's jaw. It is obvious that this type of an injury is very painful. The defendant admits that an award of $6,000 would be appropriate for this type of injury lasting approximately three months.
Plaintiff also showed special damages. Medical bills and hospitalization totaled approximately $1,701.80. (Exhibit P-11). In the year 1969, plaintiff earned approximately $11,500. In 1970, plaintiff earned approximately $10,000. In 1971, plaintiff earned approximately $4,500. Plaintiff had no earnings in 1972 or 1973. Trial date was March 29, 1973. Using 1969 as the base, we conclude that plaintiff's loss of earnings was approximately $23,000. The special damages totaled approximately $24,700. The remaining award of approximately $49,000 we must assume included pain and suffering for the back injury.
We cannot say, based on the evidence presented, that the award was either excessive nor inadequate. The jury concluded plaintiff was suffering from a herniated disc. Testimony of Dr. Akins was to the effect that surgery would result in an 85% chance of reducing pain. There was no testimony to indicate that plaintiff could return to work without some disability after the surgical procedure. We find the award to be in line with the jurisprudence of this court. Matthew v. F. Miller & Sons, 146 So.2d 522 (La.App. 3rd Cir., 1962); Whatley v. Scogin, 143 So.2d 833 (La.App. 3rd Cir., 1962); Sensat v. Travelers Indemnity Co., 166 So.2d 316 (La. App. 3rd Cir., 1964), writs denied 246 La. 871, 167 So.2d 679 (1964). We are, therefore, not disposed to reduce nor increase the award made by the jury.
For the foregoing reasons, the judgment of the trial court on the exception of prescription is affirmed, and the verdict of *163 the jury awarding the plaintiff damages in the sum of $80,000 is also affirmed. All costs are assessed to defendants.
Affirmed.
SAVOY, J., dissents being of the opinion that the award made by the jury is excessive. The preponderance of the evidence is that plaintiff does not have a disc injury.
NOTES
[1] The court held that the failure to pay advance jury costs constitutes grounds for denial of trial by jury, but does not require dismissal of the suit.