373 So.2d 586 (1979)
Viola CASSITY, Plaintiff-Appellee,
v.
James WILLIAMS, d/b/a Medi-Trans Ambulance Service, et al., Defendants-Appellees-Appellants.
No. 7019.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
*588 Gist, Methvin, Hughes & Munsterman, Alonzo P. Wilson, Alexandria, Hall, Lestage & Lestage, David Lestage, De Ridder, Provosty, Sadler & deLaunay, David Spence, Gold, Little, Simon, Weems & Bruser, Henry B. Bruser, III, Alexandria, for defendants-appellees-appellants.
Jackson, Smith & Ford, Chris Smith, III, Leesville, for plaintiff-appellee.
Before CULPEPPER, SWIFT and DOUCET, JJ.
SWIFT, Judge.
This suit arises from a vehicular collision that occurred during the noon hour on August 2, 1976, on U.S. Highway 171 in front of Southgate Plaza Shopping Center in Leesville, Louisiana. The plaintiff's automobile was struck in the rear by an ambulance. At that time it was raining and traffic was heavy.
At the site of the accident Highway 171 is a four lane blacktop highway, divided only by double yellow lines in its center between the northbound and southbound traffic lanes. The roadway is straight and level at this point.
The vehicles involved in the collision were a red Volkswagen driven by Catherine Hodnett; a 1967 Oldsmobile driven by the plaintiff, Viola Cassity; a 1973 GMC pickup truck owned by Mark Thompson and driven by Martin Reid; and a 1976 Chevrolet ambulance owned by James Williams, d/b/a Medi-Trans Ambulance Service, and driven by Billy Williams in the course and scope of his employment with Medi-Trans.
Shortly before the accident Mrs. Hodnett was traveling south in the left or inside lane of Highway 171. Because of the rain she decided to turn around and return to her home north of Leesville. She put on her left turn signal and either stopped or slowed to allow oncoming traffic to clear.
The plaintiff, who was also traveling south in the inside lane, brought her vehicle to a stop behind the Volkswagen.
Martin Reid and his wife, Debra Reid, were traveling south in the right or outside lane of the highway. On approaching the point where the Volkswagen was attempting to turn left they heard the siren of the ambulance overtaking them from the rear. Mr. Reid immediately drove the pickup truck to the entrance of the shopping center parking area on his right. He pulled into the parking lot and came to a stop roughly parallel to the edge of the highway, but probably with the left front fender of the truck protruding one or two feet into the road.
The ambulance was traveling south in the left or inside lane of the highway at a speed of 40 to 45 miles per hour with its lights and siren operating in response to an emergency call. Just as it reached the location of the other three vehicles, Mrs. Hodnett executed her left turn across the northbound lanes of travel. As the Volkswagen completed its turn, the ambulance crashed into the rear of the plaintiff's Oldsmobile propelling it into the pickup truck.
The plaintiff filed suit for damages for her personal injuries and the property damage to her car against James Williams, d/b/a Medi-Trans Ambulance Service, and Billy Williams. Joined later as defendants were the Williams' insurer, United States Fidelity and Guaranty Company (USF&G), Mrs. Hodnett, her husband, Claude Hodnett, their insurer, Government Employees Insurance Company (GEICO), and Hanover Insurance Company, the plaintiff's uninsured motorist insurer. James Williams, Billy Williams, and USF&G filed third party demands against the Hodnetts and GEICO and against Reid, Thompson and the latter's insurer, Royal-Globe Insurance Company (Royal-Globe). Hanover filed a *589 third party demand against James Williams, Billy Williams and Mr. and Mrs. Hodnett.
This suit, No. 7019, was consolidated for trial with our No. 7020, Royal-Globe Insurance Company et al. v. James Williams, d/b/a Medi-Trans Ambulance Service, et al., 373 So.2d 594. In that case Royal-Globe and Mark Thompson sued James Williams, Billy Williams, USF&G, Mr. and Mrs. Hodnett, GEICO, Viola Cassity and her insurer, Hanover Insurance Company, for property damages to the pickup truck. A third party demand was filed therein by James and Billy Williams and USF&G against Mr. and Mrs. Hodnett, GEICO, Reid and Viola Cassity.
After a trial of the two cases on the merits the trial judge concluded that Billy Williams, Catherine Hodnett and Martin Reid were each guilty of negligence which was a proximate cause of the accident and that Viola Cassity was not contributorily negligent.
Therefore, in No. 7019 judgment was rendered on the principal demand in favor of plaintiff, Viola Cassity, and against defendants, James and Billy Williams, USF&G, Mr. and Mrs. Hodnett and GEICO, in solido, for $6,414.25 with interest and costs. On the third party demands the judgment was in favor of James and Billy Williams and USF&G and against Reid and Royal-Globe, in solido, for contribution of Reid's one-third virile share of the plaintiff's award, and against Mr. and Mrs. Hodnett and GEICO, in solido, for contribution of the Hodnetts' one-third virile share of the award to Mrs. Cassity. The principal demand against Hanover and the latter's third party demand were dismissed. Reid, Royal-Globe, Mr. and Mrs. Hodnett and GEICO have appealed from this judgment.
In No. 7020 the trial judge granted judgment on the main demand in favor of the plaintiffs, $631.18 to Royal-Globe and $100.00 to Thompson with interest and costs, and against defendants, James and Billy Williams, USF&G, Mr. and Mrs. Hodnett and GEICO, in solido. The plaintiffs' demands against Mrs. Cassity and Hanover were not allowed. On the third party demand judgment was rendered in favor of James and Billy Williams and USF&G against the Hodnetts and GEICO, in solido, for Mrs. Hodnett's virile share of the plaintiffs' awards and against Reid for contribution of his virile share thereof. Reid, Mr. and Mrs. Hodnett and GEICO have appealed from this judgment.
Mrs. Cassity did not appeal, but she has filed an answer to the appeal in No. 7019 seeking an increase in the amount of her award. James Williams, Billy Williams and USF&G have filed a motion to dismiss this answer contending that since they did not appeal the plaintiff cannot have the judgment against movers modified or revised in her favor by merely answering the appeals of Reid, Globe, the Hodnetts and GEICO. In order to obtain such relief, it was necessary for her to perfect her own appeal.
Both Nos. 7019 and 7020 will be discussed in this opinion, but a separate decree will be rendered in each case.
The principal issues presented on these appeals are whether the actions of each driver, except Billy Williams, constituted negligence which was a cause in fact of the accident and the plaintiff's injuries.
Whether or not Billy Williams, the ambulance driver, was guilty of actionable negligence is no longer an issue in these cases. The trial judge correctly held that he was. Since James and Billy Williams and USF&G have not appealed from this holding, the plaintiff's judgment against them cannot be changed to her detriment. However, some consideration must be given in this opinion to the actions and responsibilities of the driver of the emergency vehicle in order to determine whether the actions of the drivers of the other vehicles constituted negligence that was a cause in fact of the accident.
Although the driver of an emergency vehicle is authorized by LSA-R.S. 32:24 to exceed speed limits and to disregard regulations governing direction of traffic flow, the statute also expressly provides that such a driver is not relieved of the duty to *590 drive with due regard for the safety of others. Carpenter v. Hartford Accident and Indemnity Co., 333 So.2d 296 (La.App. 1 Cir. 1976). A breach of this duty will result in a finding of actionable negligence on the part of the driver. Champagne v. McDonald, 355 So.2d 1335 (La.App. 3 Cir. 1978).
At the time of the accident the ambulance driver was accompanied by an attendant, J. D. Martin. Mr. Martin testified that they had driven entirely within the left or inside southbound lane up to the point of the collision and that other vehicles had been pulling to the right and to the left to allow the ambulance to pass. That the northbound traffic had pulled to its right, at least near the scene of the accident, appears to be extremely doubtful because if such had been the case Mrs. Hodnett would not have been delayed by such traffic to the extent that she was in making her left turn.
Billy Williams testified that as the ambulance approached the point of the collision he noticed plaintiff's Oldsmobile ahead in the left lane apparently sitting still and making no move to the right. He took his foot off the accelerator and put it on the brake pedal. Although the brake was not applied, he said he was ready to stop if necessary. The driver further testified that he looked for a route around plaintiff's car, but decided he could not go to the right because the left front fender of the pickup truck protruded into the right lane and because of the possibility that the plaintiff might proceed to her right at any time. He could not go around Mrs. Cassity's car on the left because there was oncoming traffic in the northbound lane and also the Volkswagen was beginning its turn across the center line blocking part of the northbound lanes. Williams said that upon realizing he could not get around plaintiff's car he applied his brakes fully. At this time he was approximately three car lengths from the Oldsmobile. The ambulance struck that car in the rear and knocked it towards the right into the left rear quarter panel of the pickup truck.
I. The actions of Catherine Hodnett.
In finding that the driver of the Volkswagen, Catherine Hodnett, was negligent, the trial judge stated in his written reasons for judgment:
"At the point where she crossed the dividing line of the two lanes going south and the two lanes going north the evidence shows she crossed a double yellow line. It is immaterial whether we believe she slowed or stopped before turning left, the driver of the Volkswagen was negligent and her negligence was a proximate cause of the accident."
In Vonderbruegge v. Bethea, 250 So.2d 407, 410 (La.App. 1 Cir. 1971) the court said:
"It is common knowledge that one of the rules of highway safety is that a driver does not cross a yellow line in his lane. It is quite obvious to this Court that this rule applies to passing situations and not to when it is necessary to cross double yellow lines where a driver wishes to leave the highway as in this instance. LSA-R.S. 32:82 B, provides that `No vehicle shall cross the painted center line of any multiple lane highway except for the purpose of making a turn'". (Emphasis added)
Thus, the mere fact that Catherine Hodnett crossed a double yellow line in executing her turn does not make her negligent.
Third party plaintiffs-appellees, James and Billy Williams and USF&G, however, contend that Mrs. Hodnett was negligent in attempting to make a left turn without first ascertaining whether she could do so safely without endangering oncoming or overtaking traffic.
Mrs. Hodnett testified that after deciding to make a left turn she turned on her left turn signal, slowed to a speed of less than five miles per hour and watched the oncoming traffic for an opportunity to turn. She did not observe any traffic behind her due to the rain and her concentration on the oncoming traffic. Mrs. Hodnett said she did not remember whether she looked into her rear view mirror, but was positive that *591 she did not see the emergency lights nor hear the siren of the ambulance before the collision.
It is well settled that a motorist who attempts to make a left turn from a public highway is required to ascertain in advance that the way is clear and that the turn can be made safely and without endangering overtaking or oncoming traffic. Failure to do so constitutes negligence. However, it is also well established that the left turning motorist has the right to assume that traffic to the rear will follow the law and common sense and maintain a proper lookout. Aetna Insurance Company v. Southern Farm Bureau Casualty Insurance Company, 347 So.2d 924 (La.App. 3 Cir. 1977).
Also, in Vonderbruegge v. Bethea, supra, the court held that the high degree of care applicable in normal left turn cases did not apply to a plaintiff making a left turn from the left hand or passing lane on a four lane street divided by a double yellow line. The court stated that at the point of crossing over the opposing lanes, plaintiff's prime obligation was to watch for oncoming traffic and she had no reason to look back in the opposite direction. Also, "without question" the plaintiff could assume that no one would pass on her left. A similar ruling was made in regard to a somewhat analogous situation in Carpenter v. Hartford Accident and Indemnity, supra.
We do not believe that Mrs. Hodnett was negligent in simply making the left turn across the double yellow line without first ascertaining that it would not interfere with southbound traffic that might cross the double yellow lines and attempt to overtake and pass her in the northbound lane.
It is further contended, however, that Mrs. Hodnett was negligent in failing to hear or see the approaching ambulance and to react as required by law.
LSA-R.S. 32:125 provides in part:
"A. Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals, ... the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such a position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
"B. This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."
The duty to yield the right of way to an emergency vehicle arises only when a motorist observes or hears, or under the circumstances should have observed or heard, the audible and visual warnings of such vehicle. The burden of proving negligence in this respect rests on the party asserting same. Carpenter v. Hartford Accident and Indemnity, supra.
In Calvert Fire Insurance Company v. Hall Funeral Home, 68 So.2d 626 (La.App. 2 Cir. 1953) several witnesses to an accident involving a collision between an ambulance and the plaintiff's automobile testified they heard the ambulance's siren as it approached. The plaintiff testified that he failed to hear the siren. His window was down, the car radio was not playing and there was no noise or disturbance to interfere with his hearing the warning signal. Under these circumstances the court concluded that the plaintiff should have heard the signal stating that, "No reason is given why he should not have heard the signal as did many other witnesses."
On the other hand, in Shaw v. Globe Indemnity Co., 134 So.2d 609 (La.App. 2 Cir. 1961), while numerous witnesses testified that they heard the sounding of the ambulance siren, the plaintiff testified she did not hear it until it was too late to attempt any action to avoid the collision. The evidence revealed that the plaintiff's windows were closed, except for a crack of about one inch on the side opposite from the approaching ambulance, and the heater and blower fan were in operation. The trial court distinguished *592 Shaw from Calvert holding that the circumstances mentioned constituted a valid reason why the plaintiff did not hear the siren.
In the present cases Debra Reid, a passenger in the pickup truck, and the plaintiff both testified they heard the siren before the accident. The plaintiff said her windows were closed and her air conditioner was operating at a low speed, but she seems to have noticed first the flashing lights on the ambulance.
Mrs. Hodnett testified that her windows were closed and that the hard pouring rain was making a loud noise on the roof of her Volkswagen. Her view of the approaching ambulance, of course, was obstructed by the plaintiff's full size Oldsmobile behind her small car.
The trial judge made no specific finding as to the awareness of Mrs. Hodnett of the approach of the ambulance. We do no believe that she was cognizant thereof and doubt seriously that the preponderance of evidence establishes that she should have been aware of its presence. But even so, we are convinced that under the circumstances of this case her turning to the left instead of the right in accordance with the statute was not a substantial factor bringing about the accident so as to be a cause in fact of plaintiff's injuries.
The ambulance driver said he was considering going around the plaintiff's automobile on its left. However, he acknowledged that the traffic on the highway was heavy and vehicles were proceeding toward the north as he approached the scene of the collision. Undoubtedly, this was the case as Mrs. Hodnett had to slow almost to a stop or stop until there was a break in the northbound traffic to turn left across the eastern lane of the highway. When this occurred, the Volkswagen turned and crossed that lane at about the same time that the ambulance struck the plaintiff's vehicle. Certainly, ordinary prudence and logic would have prevented the ambulance driver from entering the other lane until the northbound vehicles had cleared the Cassity car. Thus, the possibility of his passing the Oldsmobile on its left seems to have been nil or extremely remote.
In our opinion the only legal cause in fact of this accident was the failure of the ambulance operator to drive with due regard for the safety of all persons using the highway as required by LSA-R.S. 32:24(D) and 32:125(B), and particularly in not applying the brakes and reducing its velocity to a reasonable speed under the existing circumstances until the ambulance was approximately three car lengths from the Cassity automobile.
II. The actions of Martin Reid.
The trial judge found that in attempting to respond to the emergency signal of the ambulance, the driver of the pickup truck pulled to the right as required, "... but he went further and whipped back in kind of a U-turn." For this reason the judge concluded that Martin Reid was guilty of negligence which was a proximate cause of the accident.
According to LSA-R.S. 32:125 quoted above, on the approach of an authorized emergency vehicle a motorist must yield the right of way and immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway. In the present cases Martin Reid went beyond the requirements of the statute and attempted to completely remove the pickup from the traveled portion of the roadway. As heretofore mentioned, the truck was stopped roughly parallel to the highway, but apparently with its left front fender protruding one or two feet into the outside or right lane of travel. If Reid could have complied with the statute by stopping his vehicle entirely within the right lane, certainly he cannot be held negligent for stopping in the position just described. The district court was clearly wrong in finding that the driver of the pickup truck was negligent in this instance.
III. The actions of Viola Cassity.
The trial judge held that the plaintiff, Viola Cassity, was not contributorily negligent. *593 He found that she was presented with an emergency situation behind the Volkswagen, whose driver was attempting to turn left on a four lane highway in noon traffic, with a heavy rain falling and the ambulance approaching rapidly from the rear. Added to this was the front of the pickup truck protruding into the right hand lane from the parking lot.
The plaintiff testified that upon observing the flashing lights of the approaching ambulance she turned on her right turn signal and attempted to move over to the right hand side of the highway. However, she was prevented from doing so immediately because there was other traffic in the right hand lane which was pulling over to allow the ambulance to pass. Mrs. Cassity said she had begun to move into the right hand lane at the time she was hit by the ambulance.
The testimony of the plaintiff on the latter two points was contradicted by the testimony of J. D. Martin and Mrs. Reid. Both said that there were no cars to the right of the Cassity vehicle to prevent her from pulling into the right lane and both stated that the Oldsmobile was stopped in the left lane at the time of the impact. The policeman who investigated the accident testified that Mrs. Cassity told him she stopped in the inside lane, attempting to get in the right lane, when struck.
Nevertheless, Mrs. Reid testified that when she first heard the siren the plaintiff's Oldsmobile and the pickup were traveling side by side with the Volkswagen ahead in the inside lane. The pickup then pulled up a short distance and stopped in the entrance of the parking lot and the Oldsmobile came to a stop behind the Volkswagen. Thus, it seems clear that while Mrs. Cassity intended to pull to her right at her first opportunity she was prevented from doing so before she got to the Volkswagen because of the presence of Thompson's pickup truck.
The trial judge held that the plaintiff acted reasonably under the circumstances of the emergency with which she was confronted. We find no error in this conclusion. It is well settled that a motorist faced with a sudden emergency, not of his own creation, is required to exercise only reasonable care and is not guilty of negligence if he does not choose the best means to avoid the accident. Wiley v. Sutphin, 108 So.2d 256 (La.App. 2 Cir. 1959).
Since Billy Williams was the only driver guilty of negligence that was a cause in fact of the accident, it follows that he, his employer and their insurer are the only parties in these suits that are liable for the plaintiffs' damages. Consequently, the judgments will have to be revised accordingly.
Article 2133 of the Louisiana Code of Civil Procedure sets forth what is required for an appellee to obtain partial relief from the judgment on appeal.
In interpreting this article the Supreme Court in Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976) said:
"The article does provide that by answering an appeal, an appellee, without filing an appeal on his own behalf, may seek relief from any portion of the judgment rendered against him in favor of the appellant. It does not, however, give to an answer the effect of an appeal with respect to any portion of the judgment rendered against him in favor of a party not an appellant." [Citations omitted].
Thus, in No. 7019 the plaintiff, Mrs. Cassity, is not entitled to any revision of the judgment in her favor as against the third party plaintiffs-appellees, James and Billy Williams and USF&G.
For the reasons assigned, the judgment appealed in this suit, our No. 7019, is affirmed insofar as: (1) the award to plaintiff, Viola Cassity against the defendants, James Williams, d/b/a Medi-Trans Ambulance Service, Billy Williams and United States Fidelity and Guaranty Company, is concerned; (2) it dismissed the plaintiff's main demand against defendant, Hanover Insurance Company; (3) it dismissed the third party demand of Hanover Insurance Company against James Williams, d/b/a Medi-Trans Ambulance Service, Billy Williams, Claude E. Hodnett and Catherine H. *594 Hodnett; and (4) it dismissed the third party demand of James Williams, d/b/a Medi-Trans Ambulance Service, Billy Williams and United States Fidelity and Guaranty Company against Mark Thompson. Otherwise, said judgment is reversed and set aside and judgment is now rendered: (1) dismissing the plaintiff's main demand against Claude E. Hodnett, Catherine H. Hodnett and Government Employees Insurance Company; and (2) dismissing the third party demands of James Williams, d/b/a Medi-Trans Ambulance Service, Billy Williams and United States Fidelity and Guaranty Company against Claude E. Hodnett, Catherine H. Hodnett, Government Employees Insurance Company, Martin W. Reid and Royal-Globe Insurance Company. All costs of the suit, including this appeal are to be paid by the said third party plaintiffs.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.