699 So.2d 1167 (1997)
UNITED BILT HOMES, INC., et al., Plaintiffs-Appellees,
v.
William SCHMITT, and the City of Shreveport, Defendants-Appellants.
No. 29837-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
Carl Henry Franklin, Assistant City Attorney, City of Shreveport, for Defendants-Appellants.
Tyler & Johnson by Tommy J. Johnson, Shreveport, for Plaintiffs-Appellees.
Before BROWN, STEWART and CARAWAY, JJ.
CARAWAY, Judge.
This case arises out of an auto collision between a Shreveport Police vehicle driven by Officer William Schmitt and an automobile owned by United Bilt Homes, Inc. and driven by the plaintiff, Jerry Harris. The city appeals an adverse judgment contending that the trial court manifestly erred in its findings. Finding that the evidence supports the trial court's ruling, we affirm.

Facts
The collision occurred on July 28, 1994 around 9:30 p.m. when the plaintiff pulled out *1168 of the parking lot of Superior Bar and Grill onto the northbound lane of Line Avenue in Shreveport. The police unit came over the crest of a hill that precedes the restaurant parking lot, traveling north at a very high rate of speed with lights and sirens engaged in response to an emergency. Unable to stop, it struck plaintiff's vehicle in the rear. The trial court found that the police unit was traveling at an excessive rate of speed under the circumstances even though Officer Schmitt was responding to an emergency call. Because the parking lot exit of Superior is on the downside of a hill, the court found that Harris could not see the police unit as it approached the crest of the hill from the south, nor could he hear the siren from that point with his windows closed.
The court awarded Harris approximately $21,000 in medicals and $55,000 in general damages for his injuries, which included soft tissue injuries to his neck, back, and shoulders. A torn rotator cuff will require surgery and result in a 10% disability to the upper right shoulder. The court also awarded approximately $7,500 to United Bilt for property damage to the vehicle.
The City of Shreveport appealed alleging that the court manifestly erred in finding that the defendant was solely at fault and in finding no comparative negligence.[1] The City of Shreveport also asserts that the applicable law for emergency vehicle operation relieves it of liability under these circumstances.

Discussion
Although the driver of an emergency vehicle is authorized by La. R.S. 32:24 to exceed speed limits and to disregard regulations governing direction of traffic flow, the statute also expressly provides that such a driver is not relieved of the duty to drive with due regard for the safety of others. A breach of this duty will result in a finding of actionable negligence on the part of the driver. Cassity v. Williams, 373 So.2d 586 (La. App. 3d Cir.1979); Champagne v. McDonald, 355 So.2d 1335 (La.App. 3d Cir.1978).
With respect to "civilian" vehicles and the approach of an emergency vehicle, La. R.S. 32:125 provides in part:
"A. Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals, ... the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such a position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."
The duty to yield the right of way to an emergency vehicle arises only when a motorist observes or hears, or under the circumstances, should have observed or heard, the audible and visual warnings of such vehicle. The burden of proving negligence in this respect rests on the party asserting same. Cassity v. Williams, supra; Carpenter v. Hartford Accident and Indemnity, 333 So.2d 296 (La.App. 1st Cir.1976).
In this instance, the defendant contends that the plaintiff should have yielded to the approaching police vehicle not only because he should have seen it, but because he should have heard the sirens.
In Calvert Fire Insurance Company v. Hall Funeral Home, 68 So.2d 626 (La.App. 2d Cir.1953), several witnesses to an accident involving a collision between an ambulance and the plaintiff's automobile testified they heard the ambulance's siren as it approached. The plaintiff in Calvert testified that he failed to hear the siren. His window was down; the car radio was not playing, and there was no noise or disturbance to interfere with his hearing the warning signal. Under these circumstances, the court concluded *1169 that the plaintiff should have heard the signal stating that, "No reason is given why he should not have heard the signal as did many other witnesses."
On the other hand, in Shaw v. Globe Indemnity Co., 134 So.2d 609 (La.App. 2d Cir. 1961), although numerous witnesses testified that they heard the sounding of the ambulance siren, the plaintiff testified she did not hear it until it was too late to attempt any action to avoid the collision. The evidence revealed that the plaintiff's windows were closed, except for a crack of about one inch on the side opposite from the approaching ambulance, and the heater and blower fan were in operation. The trial court distinguished these circumstances from Calvert, supra, holding that the circumstances mentioned constituted a valid reason why the plaintiff did not hear the siren.
We conclude that the circumstances in this instance are more comparable to the Shaw case. Harris testified that as he pulled up to the parking lot exit on Line Avenue, he had his windows up and his air conditioning turned on high on that hot July evening. His radio was also on. He testified that he looked up the hill and saw nothing, looked right, and then looked left again. Seeing no approaching cars, he exited the parking lot. He did not see or hear anything until after he was fully in the street.
Plaintiff's testimony was supported by Dan Taylor, who confirmed that Harris's car had entered the street before the police car could have been seen topping the hill. As with Harris's inability to see the car, Harris's ability to hear the siren below the crest of the hill can also be reasonably presumed to have been affected.
The City presented the deposition testimony of Jill Campbell, age 17 years, who stated that she heard the siren for some 45 seconds before the police unit crested the hill from her position further down Line Avenue in the parking lot of Subway. Ms. Campbell stated that she was standing outside of her vehicle at the time, talking with friends, in contrast to the plaintiff, who was inside his vehicle with closed windows and with the radio and air conditioner running.
Additionally, there was ample physical evidence and testimony supporting the trial court's conclusion that the police unit was traveling at an excessive speed of somewhere between 55 mph and 70 mph in a 35 mph zone, when he came over the hill. One eyewitness testified by deposition that the vehicle left the ground as it crested the hill. This witness was standing on the sidewalk right where Harris pulled out of the parking lot. In an attempt to avoid the collision, the officer slammed on his brakes leaving 200 feet of tire skid marks before impact.
Considering the testimony of these eyewitnesses, we find that the trial court's conclusions that Harris did not hear the siren or see the police unit before he entered Line Avenue is supported by the evidence as thoroughly reviewed in the court's written ruling. Under these circumstances, the trial court correctly concluded that the defendant was at fault and the plaintiff was not at fault.
For these reasons, we affirm the judgment of the trial court. Defendant is cast for costs of this appeal to the extent allowed by law.
AFFIRMED.
NOTES
[1] Although the amount of damages was assigned as an error, counsel for appellant did not brief the issue and conceded at oral argument that the issue was abandoned, preferring to focus on the issue of liability.