737 So.2d 189 (1999)
Michael BUTCHER, Plaintiff-Appellant,
v.
CITY OF MONROE, Monroe Police Department, and Vince Hodnett, Defendants-Appellees,
No. 31,932-CA
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*191 Bruscato, Tramontana & Wolleson by Anthony J. Bruscato, Monroe, Counsel for Appellant.
Nanci S. Summersgill, Assistant City Attorney, Counsel for Appellees City of Monroe, Monroe Police Dept., and Vince Hodnett.
Larry Arbour, West Monroe, Counsel for Appellee Vince Hodnett.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, J.
This personal injury suit arises out of an accident involving a bike owned and operated by the plaintiff, Michael Butcher, and a patrol car owned by the Monroe Police Department, and operated by Officer Vince Hodnett. The plaintiff's petition also names as a defendant, the City of Monroe. The trial court rendered judgment in favor of the defendants, the City of Monroe and Monroe Police Department, finding the plaintiff at fault for the accident. The plaintiff now appeals. We reverse and render.

FACTS
On August 8, 1995, the 18-year-old plaintiff, Michael Butcher ("Michael"), was riding his mountain bike home, in Monroe, Louisiana when an accident occurred. After working the late shift at McDonalds that ended at 12:30 a.m., Michael was picked up by his mother who dropped him off at a friend's apartment to pick up his brand-new mountain bike. Michael got the bike and was returning home. He intended to cross Louisville Avenue, a five-lane roadway, by proceeding North from Washington Street behind Super 1 Foods, onto Superior Lane, and then to its intersection with Louisville Avenue. The speed limit on Louisville Avenue in Monroe is forty miles per hour. Traffic at the intersection of Superior Lane and Louisville Avenue is controlled by a stop sign directed toward Superior Lane. When Michael reached the intersection of Louisville Avenue and Superior Lane, he was traveling slowly enough to have put his foot down to stop had he seen a car. After looking both *192 ways and seeing no vehicles, Michael Butcher proceeded through the intersection where he was struck by a speeding Monroe Police Department patrol unit driven by Officer Vince Hodnett (Officer "Hodnett").
Officer Hodnett was traveling approximately 62 mph with a blue strobe light on his dashboard and was manually blinking his headlights as he rounded the curve on Louisville immediately preceding the intersection at approximately 2:45 a.m.. Officer Hodnett testified that he was responding to an emergency dispatch call for "all available units" for a burglary in progress at Cash America Pawn Shop, 3003 Louisville Avenue and that he observed Michael enter the intersection at a high rate of speed, without stopping his bike at the stop sign. The pawn shop was located one block east of the scene of the accident. Officer Hodnett further testified that he applied his brakes and swerved in an effort to avoid a collision. He could not and the patrol car struck Michael's bike.
As a result of the accident, Michael Butcher suffered extensive injuries which included an open comminuted fracture of the right tibia and fibula, a fracture of the left ankle, a fracture of the coccyx, a torn medial meniscus in his right knee, posttraumatic leg length discrepancy, a subdural hematoma, bruised lungs, a liver injury, and multiple abrasions and lacerations. Michael Butcher was hospitalized for nine days, three of which were in ICU. He also underwent plastic surgery, arthroscopic surgery of his knee, orthopedic internal fixation of his fractured tibia and a corrective procedure adjustment of the tibial implant. Future plastic surgery is being considered. Michael Butcher incurred medical expenses of $56,887.45 and alleged he suffered lost wages.
Michael Butcher filed suit against the City of Monroe, Monroe Police Department ("Monroe PD") and Officer Hodnett, seeking damages for injuries he suffered when he was hit by the speeding Monroe PD patrol police unit. Subsequently, Michael Butcher dismissed his claim against the defendant, Officer Hodnett, individually. The bench trial began on October 13, 1997. Following the presentation of evidence on October 15, 1997, the case was taken under advisement. For written reasons filed on February 12, 1998, the court rendered judgment in favor of the defendant, City of Monroe, dismissing and rejecting the plaintiff's demands with prejudice at plaintiff's cost.
The court further ruled that because the issue of liability was decided against the plaintiff, the court did not consider the issue of the plaintiff's claim for injuries and damages. The plaintiff now appeals, urging that the trial court erred in finding the plaintiff solely liable for the accident.

DISCUSSION
In Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) the Louisiana Supreme Court explained:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978) [remaining citations omitted].
Findings of respective percentages of fault under CC Art. 2323 are factual findings not to be disturbed on appeal unless, for well-articulated reasons, they are determined to be clearly wrong, manifestly erroneous. Whether a fact-finder determines a party to be one percent at fault, totally at fault, or somewhere in between, the manifest error rule applies. Walker v. Bankston, 571 So.2d 690, 695 (La.App. 2 Cir.1990).
To determine whether a defendant is liable for negligent conduct, the duty/ *193 risk analysis of LSA-C.C. Art. 2315 must be applied. The plaintiff must prove by a preponderance of the evidence that:
(1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant failed to conform his conduct to the appropriate standard (breach of duty); (3) defendant's conduct was the cause-in-fact of plaintiffs injuries (cause-in-fact); (4) defendant's conduct was a legal cause of plaintiffs injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) plaintiff incurred actual damages (damages). Theriot v. Lasseigne, 93-2661 (La.7/5/94); 640 So.2d 1305; Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993); Fowler v. Roberts, 556 So.2d 1 (La.1989).
A negative answer to any of the above inquiries will result in the determination of no liability. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94); 646 So.2d 318.
La. R.S. 32:24(B)(3) allows police officers to exceed the maximum speed limits and disregard certain regulations so long as they do not endanger life or property. However, the exception granted to emergency vehicles "shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle."
However, the provisions of La. R.S. 32:24(D) provides that the exception:
[S]hall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
A breach of this duty, La. R.S. 32:24, will result in a finding of actionable negligence on the part of the driver. United Bilt Homes, Inc. v. Schmitt, 29,837 (La.App. 2 Cir. 9/24/97), 699 So.2d 1167, 1168; Cassity v. Williams, 373 So.2d 586 (La.App. 3d Cir.1979); Champagne v. Mc-Donald, 355 So.2d 1335 (La.App. 3d Cir. 1978).
In United Bilt Homes, Inc. v. Schmitt, supra, the plaintiff was leaving Superior Bar and Grill, and turned onto Line Avenue, a four-lane street, on the down side of a hill. Coming over the hill, at an excessive rate of speed, was a Shreveport Police Officer, who had both his siren and top lights on. In an attempt to avoid the collision, the officer slammed on his brakes leaving 200 feet of tire skid marks before impact. Because the plaintiffs windows were up and his air conditioner on, this court found that the plaintiff did not hear the siren or see the police unit before he entered Line Avenue and that the police officer was solely at fault for the collision.
Whether a duty is owed is a question of law. Whether the defendant breached that duty is a question of fact. Roberts v. Benoit, 605 So.2d 1032 (La. 1991); Holt v. Cannon Exp. Corp., 1998 WL 854571, 722 So.2d 433 (La.App. 2 Cir. 1998). The initial inquiry of the duty-risk analysis is satisfied as Officer Hodnett owed a duty to Michael to conform his conduct to the specific standard set out by La. R.S. 32:24. Next, we must consider whether Officer Hodnett breached his duty and whether the risk and harm caused to Michael was within the scope of the protection afforded by the duty in La. R.S. 32:24. This inquiry requires an analysis of the circumstances of the particular case.
In the instant case, at 2:38 a.m. Officer Hodnett was responding to a suspicious person call which was 4½ miles from the accident scene. At 2:40 a.m. Officer Guiterrez was dispatched to Cash America Pawn Shop on Louisville Avenue for a burglary in progress. He received assistance from two other officers and caught one of the bandits. Officer Hodnett, en route to assist Officer Guiterrez, exceeded the maximum speed limits, traveling more *194 than 60 mph on Louisville Avenue.[1] He was operating a patrol car that was not equipped with overhead lights and he did not have his siren on, as he was nearing a crime scene. Officer Hodnett testified that he had his blue flashing strobe light on his dashboard and was manually switching his headlights from high to low beam, as the system to switch them automatically was not functioning.
We note that in response to the burglary in progress at the pawn shop, these Officers used the "quiet approach," meaning they turned everything off including headlights as not to announce their arrival. Chief of Police, Joe Stewart (Stewart), testified that he and other officers have exercised the quiet approach in emergency situations such as a burglary in progress or armed robberies which necessitate exceeding the speed limit, with no sirens, and sometimes no headlights. Stewart further testified that a quiet approach is made within a block or two.
When responding to a burglary in progress, both speed and silence are important as a police officer approaches the scene. Therefore, a police officer should be ever alert and observant to insure that his way was clear. Responding to an emergency call does not relieve a police officer of his duty to drive with due regard for the safety of others.
In the instant case, the accident occurred within a block of the burglary. As Officer Hodnett proceeded around the curve on Louisville Avenue traveling at a high rate of speed, without audible warnings, and manually switching his headlights from high to low beam, he saw Michael on his bike. He slammed on his brakes and swerve before striking Michael on his bike and leaving 196 ft. of skid marks.
The Monroe PD transcript of the dispatcher reveals that as Officer Hodnett was speeding to the burglary he was talking on his radio to dispatch. The photos of Louisville Avenue, taken at various intervals, show that as a vehicle enters the curve, from Officer Hodnett's vantage point, the intersection of Superior Lane and Louisville Avenue is not visible such that a driver can determine that he has a clear path ahead. Officer Hodnett was blind as to what lay ahead and was distracted by talking on the radio and manually switching his headlights from high to low beam. He should have slowed down in the curve and should not have picked up his speed until he had insured that the way was clear. Failure of Officer Hodnett to reduce his rate of speed until he could see that his path was clear was a substantial factual cause of the accident. Had officer reduced his speed, he most probably would have observed Michael in enough time to avoid the accident. Officer Hodnett was excessively exceeding the speed limit through a curve without determining that his path was clear and that it was safe to continue at a high rate of speed.
Nevertheless, the only clear witness to what Michael did in entering the intersection was Michael and the trial court appears to accept his testimony. Michael testified that he was traveling slowly enough to have put his foot down to stop had he seen a car. After looking both ways and seeing no vehicles, Michael Butcher proceeded through the intersection where he was struck by a speeding Monroe Police Department patrol unit.
As for the defendants argument that Michael failed to stop at the stop sign, the duty to yield the right of way to an emergency vehicle arises only when a motorist observes or hears, or under the circumstances should have observed or heard, the audible and visual warnings of such a vehicle. The burden of proving negligence in this respect rests on the party asserting same. Cassity v. *195 Williams, supra at 591; La. R.S. 32:125. Based upon the record, it appears that the court accepted Michael's testimony that he looked both ways and seeing no vehicles proceeded through the intersection. Therefore, Michael did not observe the police car around the curve on Louisville Avenue. He could not have heard the police car because the siren was not on. There is an absence of factual support that Michael, under the circumstances, could have observed or heard, the audible and visual warnings of the police car.
Although the driver of an emergency vehicle is authorized by LSA-R.S. 32:24 to exceed speed limits and to disregard certain regulations, the statute also expressly provides that such a driver is not relieved of the duty to drive with due regard for the safety of others. Officer Hodnett was exceeding the speed limit around a curve before determining that his path was clear on the opposite side of the curve and without determining that it was safe to continue at a high rate of speed.
Our review of the record, testimony, and exhibits convinces this court that Officer Hodnett breached the duty owed to Michael to drive with due regard for the safety of others by driving at an excessive rate of speed around a curve without determining that his path was clear. Officer Hodnett is not entitled to the protection of the emergency vehicle statute, La. R.S. 32:24. The provisions of La. R.S. 32:24(D) were specifically designed to protect Michael from the accident that resulted from Officer Hodnett's conduct of driving without due regard for the safety of others. Furthermore, based upon the fact that Officer Hodnett was communicating with dispatch on his radio while drive at a high rate of speed, steering and manually flashing his headlights leads this court to the conclusion that Officer Hodnett was distracted and not fully observant.
We find that the trial court was clearly wrong in finding that Officer Hodnett was visible and should have been seen by Michael, that Michael was solely at fault for his injuries and that Officer Hodnett's speed was reasonable under the circumstances. Michael was not aware of any impending danger about to emerge from around the curve on Louisville Avenue. Officer Hodnett's warning was not sufficient to warn Michael of his approach from around the curve. We find that the trial court committed manifest error in finding that Officer Hodnett was acting within the parameters of La. R.S. 32:24 and not operating his vehicle without due regard for the safety of others. Accordingly, the defendants are liable for the plaintiff's damages.
Because of the trial court's finding on the issue of liability, the trial court did not rule on the issue of damages. If the fact finder does not reach an issue because of an earlier finding which disposes of the case, the appellate court, in reversing the earlier finding, must make a de novo determination of undecided issues from the facts presented in the record. Austin v. Fibrebond Corp., 25,565 (La.App. 2 Cir. 2/23/94) 638 So.2d 1110, 1114; Craven v. Universal Life Ins. Co., 95-1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, writ denied, 96-1332 (La.9/27/96), 679 So.2d 1355. Generally, if the appellate court makes a finding that the trial court was manifestly erroneous or that there is a legal error and the record is, otherwise, complete, the appellate court should, if it can, render judgment on the record. In such cases, the appellate court is not subject to the manifest error rule, but decides the case de novo. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986); Otto v. State Farm Mutual Automobile Insurance Company, 455 So.2d 1175, 1177-78 (La.1984).
In the present case, the trial court never reached the issue of damages suffered by Michael, thus, we now undertake a de novo review of the entire record on the issue of damages, as the record is complete.

*196 DAMAGES
The impact of the police car threw Michael across the hood of the car, where he crashed into the windshield, and then struck the metal portion of the roof before becoming airborne and being thrown 117 feet to the asphalt. Immediately following the accident, Michael was taken by ambulance to the St. Francis Medical Center emergency room. As a result of the accident, Michael Butcher suffered extensive injuries which included an open comminuted fracture of the right tibia and fibula, a fracture of the left ankle, a fracture of the coccyx (tail bone), a torn medial meniscus in his right knee, post-traumatic leg length discrepancy, a subdural hematoma, bruised lungs, a liver injury, multiple abrasions and lacerations. Michael Butcher was hospitalized for nine days, three of which were in ICU. He also underwent plastic surgery, arthroscopic surgery of his knee, orthopedic internal fixation of his fractured tibia and a corrective procedure adjustment of the tibial implant. Future plastic surgery is being considered to remove the thick raised keloid scars on his face, ear, right neck, and right shoulder.
Michael testified that for the first two months medication did not help, that he was unable to leave his apartment with casts on both legs, that he returned to school three months later on crutches, that he is ashamed of the permanent scars on his face, ear, right neck, and right shoulder, that pain, swelling and the inability to extend his right knee persisted even 14 months post accident and that his right leg is shorter than his left leg.
Dr. Grant Arthur Dona (Dr. Dona), orthopedic surgeon, testified that as a result of the collapse of the fracture sites and the removal of the screws, the right leg is somewhat shorter than the left leg and this condition is permanent. Dr. Dona continued treating Michael. On May 27, 1996, x-rays revealed that the fibula fracture had not healed, which was the source of Michael's complaints of pain, swelling and inability to fully extend his right knee. Dr. Dona suspected problems with the knee joint on November 15, 1996 and on January 3, 1997, Dr. Dona performed the third surgery on Michael's right knee, removing a portion of the torn medial meniscus and leading to the increased risk of arthritis.
Dr. Timothy Michael (Dr. Michael), plastic surgeon, testified that Michael had a long laceration across the upper lip between the upper lip and the nose with another laceration that extended inside his mouth. The intra-oral part of it and the mucus membrane in the mouth was torn and ripped open. Dr. Michael further testified that reconstruction of Michael's face was difficult, that Michael's scars became raised and thick, keloid scars, and that more surgery would be required to improve the appearance of his face where the keloid scars occurred.
In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Instead, we set the award in an amount which is just compensation for the damages revealed by the record. Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1980); Whitaker v. Mullinax, 628 So.2d 222 (La.App. 2d Cir.1993); Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (La. App. 2d Cir.1991), writ denied, 588 So.2d 1119 (La.1991).
There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Estate of Thomas v. State, D.O.T.D., 604 So.2d 617 (La.App.2d Cir.1992), writ denied, 608 So.2d 167 (La.1992). Factors to be considered in assessing quantum for pain and suffering are severity and duration. Glasper v. Henry, 589 So.2d 1173 (La.App. 4th Cir.1991), writ denied, 594 So.2d 1315 (La.1992); Miller v. Winn-Dixie Stores, Inc., 527 So.2d 989 (La.App. 3d Cir.1988), writ denied, 531 So.2d 763 (La.1988).
*197 After reviewing the entire record in this matter, we find that an award of $300,000 in general damages will adequately compensate the plaintiff, Michael Butcher, for his injuries, pain and suffering. Compare, Carter v. Baham, 95-2126 (La. 4th Cir. 10/9/96), 683 So.2d 299; Joffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3rd Cir.1990); Jones v. Peyton Place, Inc., 95-0574 (La.App. 4th Cir. 5/22/96), 675 So.2d 754; Faulkner v. State, Dept. of Transp. and Dev., 25,857, 25,858 (La.App. 2d Cir. 10/26/94), 645 So.2d 268; Couvillion v. Shelter Mut. Ins. Co., 951186 (La. App. 1 Cir. 4/4/96); 672 So.2d 277.
Furthermore, the record reveals that Michael incurred medical expenses in the amount of $56,887.45. This amount is recoverable in full. Thames v. Zerangue, 411 So.2d 17 (La.1982).
As for lost earnings, the burden is on the plaintiff to prove that because of his injuries he has suffered a loss of income. Warner v. Great Atlantic & Pacific Tea Co., Inc., 583 So.2d 61 (La. App. 2d Cir.1991). Michael was 18 years old, beginning his senior year at Neville High School, and working at McDonalds at the time of the accident, August 8, 1995. Michael's income tax return for 1995 was filed into evidence. As a result of the accident, Michael was unable to earn wages for approximately 59 weeks. We feel that $7,522.50 is the appropriate measure of Michael's lost earnings.

CONCLUSION
For the reasons set forth above, we reverse and set aside the judgment of the trial court and render judgment against the defendants and in favor of the plaintiff.
IT IS HEREBY ORDERED that there be judgment in favor of Michael Butcher against City of Monroe and Monroe Police Department in the amount of $364,409.95, together with legal interest from the date of judicial demand until paid. Costs of this appeal are taxed against the defendants, in accordance with LSA-R.S. 13:5112.
REVERSED and RENDERED.
NOTES
[1] The speed limit on Louisville Avenue in Monroe is forty miles per hour. An estimate, based upon the Monroe PD log sheet, determined that it took Officer Hodnett approximately four minutes to travel from the south side of Monroe to the accident scene.