775 So.2d 1155 (2000)
Sharon O'NEAL and Edmund A. O'Neal, Individually and as Husband and Wife, Plaintiffs-Appellees,
v.
James Larry SCOTT and Safeway Insurance Company, Defendants-Appellants.
No. 34,276-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2000.
*1156 Tracy L. Oakley, Ruston, Counsel for Appellants.
*1157 J. Allen Cooper, Jr., Counsel for Appellees.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The defendant, Safeway Insurance Company, appeals a trial court judgment finding that its insured, James Larry Scott, was totally at fault in an automobile accident. Safeway also objects to the damages awarded. The plaintiffs, Sharon O'Neal and her husband, Edmund O'Neal, answer the appeal, objecting that the general damage award was too low and that the trial court erred in failing to award damages for loss of income and for loss of consortium. We affirm in part and reverse in part the trial court judgment.

FACTS
In the late afternoon of September 14, 1998, Sharon O'Neal was driving her vehicle southbound on Quail Creek Road at its intersection with Shreveport Barksdale Highway. Mr. Scott was also driving south on Quail Creek Road, at the intersection. The parties admitted into evidence the police report, which contained a statement by Mr. Scott that he was behind a car that stopped suddenly, so he had to swerve over to avoid hitting that vehicle. According to Mrs. O'Neal, Mr. Scott moved over into her lane and collided with the rear door on the driver's side of her vehicle. At trial, Mr. Scott testified that a car stopped in front of him at the intersection. He looked in his rear view mirror and saw Mrs. O'Neal behind him. He then signaled a lane change and attempted to go around the stopped car. He contends that Mrs. O'Neal went over onto the shoulder of the road in an attempt to cut around and in front of Mr. Scott. He claims the collision occurred at that point.
On March 19, 1999, Mrs. O'Neal and her husband filed suit against Mr. Scott and his insurer, Safeway Insurance Company, for property damage, loss of income, medical costs, pain and suffering, mental anguish, and loss of consortium. Mrs. O'Neal claimed to have sustained injuries to her neck, back, left shoulder, and right hip. Mrs. O'Neal also contended that due to her injuries, she suffered a loss of income in her pet grooming business. Mr. Scott was dismissed as a defendant due to his filing of Chapter 7 bankruptcy. The plaintiffs proceeded to trial against Safeway Insurance Company.
A bench trial was held on March 1, 2000. Mrs. O'Neal and Mr. Scott presented their conflicting testimony as to how the accident occurred. The plaintiffs also presented evidence and testimony to support their claims for damages. After hearing the evidence, the trial court ruled from the bench, finding that this was a relatively minor accident. He found Mrs. O'Neal to be credible and found Mr. Scott to be solely at fault in causing the accident. The court noted that Mrs. O'Neal's version of the accident was in agreement with the police report filed into evidence. The court denied the claim for loss of income, finding that the pet grooming business was a corporation which had not made a claim in this case. The court also found that the business grew after the accident. Mr. O'Neal's claim for loss of consortium was also denied. The court allowed recovery for chiropractic treatment from the date of the accident through October 30, 1998, totaling $1,540.00, and awarded $6,000.00 in general damages. The court also awarded $625.00 in property damage. Judgment to this effect was signed March 14, 2000. The defendant appealed and the plaintiffs answered the appeal.

FAULT
The defendant contends that the trial court erred in finding Mr. Scott to be 100% at fault in causing the accident. Safeway contends that the accident was caused when Mrs. O'Neal attempted to pass Mr. Scott in the intersection and then tried to cut back in front of him. Safeway argued that the location of the damage on *1158 the left rear door of Mrs. O'Neal's vehicle supports its claim that she caused the accident. This argument is without merit.
A district court's findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Lewis v. State, Through Department of Transportation and Development, 94-2370 (La.4/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as a trier of fact it would have ruled differently. Lewis, supra. A finding of fact by a trial court should be upheld unless it is clearly wrong. Madison v. Thurman, 32,401 (La. App.2d Cir.10/27/99), 743 So.2d 857.
When findings of fact are based upon evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra; Turner v. State Farm Mutual Automobile Insurance Company, 32,423 (La. App.2d Cir.10/27/99), 743 So.2d 924.
Findings of respective percentages of fault under La. C.C. art. 2323 are factual findings not to be disturbed on appeal unless, for well-articulated reasons, they are determined to be clearly wrong or manifestly erroneous. Whether a fact finder determines a party to be one percent at fault, totally at fault, or somewhere in between, the manifest error rule applies. Butcher v. City of Monroe, 31,932 (La. App.2d Cir.5/5/99), 737 So.2d 189, writ denied, 99-1608 (La.9/17/99), 747 So.2d 566.
Mr. Scott testified that he was traveling south on Quail Creek Road, through the intersection with Shreveport Barksdale Highway when a car stopped in front of him. He stated that because the car stopped abruptly, he went to his right to get around it. He claims that he checked his rear view mirror, saw Mrs. O'Neal behind him, activated his right blinker and then moved to the right. At trial he stated that Mrs. O'Neal's car was white. In his deposition he testified that her car was light blue. Pictures of the vehicle filed into evidence show that the color of the vehicle was light beige. Mr. Scott claims that when he collided with Mrs. O'Neal's car, she was "coming around me and cut back in front of me." Mr. Scott testified that he saw Mrs. O'Neal slam on her brakes and then the two cars collided in the intersection. He acknowledged the impact with Mrs. O'Neal's vehicle was on the rear door and panel on the driver's side. He denied telling the police officer at the scene that he had to swerve to avoid hitting the vehicle in front of him and that this caused him to collide with Mrs. O'Neal.
According to Mrs. O'Neal, at the time of the accident, she was traveling south on Quail Creek Road at the intersection with Shreveport Barksdale Highway. She testified that some cars were stopped in the middle of the intersection, turning left. She stated that she did not have to swerve outward to get around the cars. She denied veering off the roadway onto the shoulder. Mrs. O'Neal stated that she was two-thirds of the way through the intersection when her vehicle was struck by Mr. Scott.
The police report in this case shows that Mr. Scott said that he was behind a car that had stopped suddenly and he had to swerve to avoid hitting that vehicle. This *1159 maneuver caused him to strike Mrs. O'Neal's vehicle. Mrs. O'Neal told the police officer that she was driving straight through the intersection when Mr. Scott struck her vehicle on the side. The officer noted no physical injuries to either party and listed the damage to both vehicles as minor. The photograph of Mrs. O'Neal's vehicle introduced into evidence at trial shows that the left rear door and quarter panel suffered deep paint scratches. However, there was no significant denting.
In this matter, conflicting testimony was presented concerning how the accident occurred. As found by the trial court, Mrs. O'Neal's testimony was supported by the police report. Further, even though Mr. Scott claimed that Mrs. O'Neal was behind him immediately prior to the accident, he never accurately described the color of her vehicle.
We also reject Mr. Scott's claim that the damage to Mrs. O'Neal's vehicle is inconsistent with her version of how the accident occurred. Upon examination of the photographs in evidence in this case, the damage to the vehicle is consistent with Mrs. O'Neal's claim that Mr. Scott struck her vehicle as she was proceeding through the intersection. Therefore, we affirm the trial court's judgment finding that Mr. Scott was solely at fault in causing this accident.

GENERAL DAMAGES
Safeway argues that the trial court's award of $6,000.00 in general damages to Mrs. O'Neal was excessive. Safeway contends that an appropriate award in this case would be $2,500.00 to $3,500.00. In the plaintiffs' answer to the appeal, they contend that the general damage award was too low. They claim that Mrs. O'Neal's treatment as a result of this accident lasted at least six months and that an appropriate award for general damages would be in the range of $12,500.00. We find that both arguments are without merit.
General damages are those that may not be fixed with pecuniary exactitude. Such damages involve mental and physical pain and suffering, inconvenience, the loss of physical enjoyment, or other losses of lifestyle that cannot be definitively measured in monetary terms. Caldwell v. Smith, 25,956 (La.App.2d Cir.8/17/94), 641 So.2d 1011. In appellate review of general damages, the initial inquiry is whether the award for the particular injuries and their effects under the circumstances on the particular injured person is a clear abuse of the fact finder's broad discretion. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In determining whether the trier of fact abused its discretion in making an award, the evidence must be viewed in the light most favorable to the prevailing party. Youn v. Maritime Overseas Corporation, supra; Terry v. Sutherlands Lumber Company, 32,345 (La.App.2d Cir.9/24/99), 742 So.2d 756. Only after a review of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Whitthorne v. Food Lion, Inc., 30,105 (La.App.2d Cir.1/21/98), 706 So.2d 193.
Mrs. O'Neal, who is 5' 3" tall and weighs 105 pounds, testified that she received chiropractic care before the accident for neck pain and headaches. She stated that her pain at that time was attributable to stress and tension. After the accident, she claimed she had headaches, soreness, stiffness, lower back pain and a bruise on her right hip. She stated that her pain was intense for a week to ten days after the accident. At trial, she stated that she still had flare-ups of pain.
*1160 Mrs. O'Neal's chiropractor, Dr. Michael Allen, testified that he had been treating her for approximately two years prior to this accident for headaches, neck stiffness and right shoulder pain. She came in for treatment as needed. Some visits were four to five months apart.
After the accident, the plaintiff complained of left neck and shoulder pain, as well as left lumbar and right hip pain. She had swelling in her neck which was still somewhat present in March 1998. After the accident, Mrs. O'Neal's neck x-rays showed a more pronounced straightening of the cervical joint which is indicative of strain, probably trauma induced. Mrs. O'Neal's back x-rays showed evidence of muscle tightness. Following the accident, Mrs. O'Neal went to Dr. Allen once or twice per week from September 15, 1998 until October 30, 1998. Dr. Allen stated that Mrs. O'Neal came in for treatment much more frequently than most patients. After October 1998, her complaints had largely returned to those prior to the accident and her visits to Dr. Allen were one to two months apart.
Based upon the record before us, we find that the plaintiff suffered new injuries and an exacerbation of old complaints. She sought treatment on a frequent basis for approximately six weeks following the accident. After that point, she was treated less frequently and her complaints became consistent with those existing before the accident. Because the plaintiff suffered only minor soft tissue injuries which required no surgery and only six weeks of therapy, we find that the trial court's general damage award of $6,000.00 is not excessively high or low. We affirm the trial court judgment as to this element of damages.

LOSS OF INCOME
The plaintiffs object to the trial court's denial of loss of income and "economic opportunity." The plaintiffs argue that the trial court incorrectly concluded that the pet grooming corporation, Paws and Claws, Inc., was the proper entity entitled to make the claim for lost profits. According to Mrs. O'Neal, she is seeking to recover her personal loss of income and economic opportunity as a result of the accident, not loss of corporate profits. This argument has merit.
Awards for past lost wages are not susceptible to the great discretion given the fact finder because past lost income is susceptible to mathematical calculation. Past lost income can be computed on an amount the plaintiff would in all probability have been earning at the time of trial and damages for loss of past income are not necessarily limited to a multiplier of the amount earned at the time of injury. Robbins v. State ex rel. Department of Labor, 31,590 (La.App.2d Cir. 2/24/99), 728 So.2d 991. Lost earnings need not be precisely proven, but they must be shown with reasonable certainty. Carter v. Brookshire Grocery Company, 29,166 (La. App.2d Cir.2/26/97), 690 So.2d 933, writ denied, 97-0782 (La.5/1/97), 693 So.2d 734.
In this case, the trial court determined that the plaintiffs could not recover for lost income because a loss of profits was a cause of action that could only be asserted by the corporation, Paws and Claws, Inc. No authority for this ruling was cited. On appeal, Safeway Insurance Company has cited the case of Yarbrough v. Federal Land Bank, 31,831 (La.App.2d Cir.5/5/99), 732 So.2d 1244, in support of the trial court ruling. We find this case to be distinguishable from the present case.[1]
In the present case, Mrs. O'Neal is not claiming damage to the corporation or a loss of corporate profits. The plaintiffs submitted documentation that the corporation lost $1,707.00 due to the inability of Mrs. O'Neal to help in the grooming of *1161 large dogs. However, she seeks to recover only one-half that amount, the sum that the corporation would have paid her in income for these services. Therefore, the plaintiffs are not making a claim for loss of corporate profits, but only for Mrs. O'Neal's personal loss of income due to her injuries arising from this accident. Therefore, we find that the trial court erred in failing to allow recovery for this element of damages.
Mrs. O'Neal documented her loss of income by admitting into evidence a list of large dogs that had been groomed in the past but could no longer be accepted due to her physical limitations. The plaintiffs adequately proved that Mrs. O'Neal's injury had an economic impact on her salary shortly after the accident and that she lost $841.00.[2] The record also shows that Mrs. O'Neal had problems with neck pain before the accident and that shortly after the accident, her complaints returned to those she previously experienced. In light of these considerations, we find that the plaintiffs are entitled to recover only the amount of $841.00, which was shown to be the amount of income Mrs. O'Neal lost soon after the accident as a result of her injuries. We make no award for loss of future earnings or for loss of earning capacity.

LOSS OF CONSORTIUM
The plaintiffs contend that the trial court erred in refusing Mr. O'Neal's claim for loss of consortium. According to the plaintiffs, Mrs. O'Neal was unable to fulfill her household duties for two weeks following the accident and since them she has only been able to do 40% to 50% of the housework. Further, Mrs. O'Neal is not able to go on camping trips as frequently as before the accident. They contend that an appropriate award for this element of damages would be $1,000.00.
In general, a claim for loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of financial support, (6) loss of aid and assistance, and (7) loss of fidelity. Bell v. USAA Casualty Insurance Company, 30,172 (La.App.2d Cir.1/21/98), 707 So.2d 102, 110, writs denied, 98-0712, 98-0766 (La.5/8/98), 718 So.2d 433, 434; Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). A loss of consortium award is a fact-specific determination, to be decided case-by-case, and is disturbed only if there is a clear showing of an abuse of discretion. Rudd v. Atlas Processing Refinery, 26,048 (La.App.2d Cir.9/21/94), 644 So.2d 402, 411, writ denied, 94-2605 (La.12/16/94), 648 So.2d 392.
Mr. O'Neal testified regarding his loss of consortium claim. He stated that even though his wife had some pain prior to the accident, the pain in her neck and back were more severe after her injury. He testified that she stopped cleaning as much and was not as active. According to Mr. O'Neal, he has to help with the cooking and cleaning two to three times per week. Further, while the family used to go on camping trips four to five times per year, they now go only twice a year. Mrs. O'Neal corroborated her husband's testimony regarding household duties and camping since the accident.
The record shows that, at most, Mr. O'Neal has had to help more with household duties and the frequency their camping trips has declined. The plaintiffs have not had to hire anyone to help with household duties and no testimony was elicited regarding a strained marriage, loss of love and affection, or lack of sexual relations. Mr. O'Neal did not mention any change in *1162 his wife's attitude toward him. Upon the evidence presented, we do not find that the trial court erred in failing to make an award for loss of consortium. The plaintiffs' claim in this regard is rejected.

CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment finding James Larry Scott to be solely at fault in causing this accident. We also affirm the trial court's award of general damages to Sharon O'Neal in the amount of $6,000.00. We further affirm the trial court decision denying an award for loss of consortium to Edmund O'Neal. We reverse that portion of the trial court judgment denying Mrs. O'Neal's claim for loss of income. We award Mrs. O'Neal $841.00 for that element of damages. Costs in this court are assessed to the defendant, Safeway Insurance Company.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] In Yarbrough, supra, this court upheld the trial court judgment sustaining an exception of no right of action, based upon the legal premise that a shareholder of a corporation has no right to a claim of damages suffered by the corporation.
[2] The plaintiffs presented a list documenting $1,707.00 in lost business. However, the list indicates that one dog would not have been accepted for grooming because of a discipline problem, regardless of Mrs. O'Neal's injuries. We have subtracted $25.00, the amount charged for that dog, from the total amount, leaving $1,682.00 as the total amount of business lost.